R. Robert BAILEY, and Ed H. Smith, Individually, and on Behalf of the Committee to Save Arkansas Jobs, Inc., and All Others Similarly Situated *v.*
W.J. "Bill" McCUEN, Secretary of State

Committee for a Safe Workplace, *Intervenor*

94-951 884 S.W.2d 938

Supreme Court of Arkansas
Opinion delivered October 14, 1994

278

*Friday, Eldredge & Clark*, by: *Elizabeth J. Robben, Harry A. Light*, and *Joann E. Roosevelt*, for petitioners.

*Winston Bryant*, Att'y Gen., by: *Ann Purvis* and *Melissa K. Rust*, Asst. Att'ys Gen., for respondent.

*Youngdahl, Sadin & McGowan*, by: *James E. Youngdahl* and *Thomas H. McGowan*, for intervenor Committee for a Safe Workplace.

ROBERT L. BROWN, Justice. This is an original action by the petitioners, R. Robert Bailey and Ed H. Smith, individually, and on behalf of The Committee to Save Arkansas Jobs, to remove the proposed Workers' Compensation Amendment from the bal-

lot. The petitioners seek a declaration that the initiative petition filed under Amendment 7 to the Arkansas Constitution is insufficient. They further seek removal of the proposed amendment from the November 8, 1994 ballot and a direction that any votes cast on the issue not be counted. The petitioners have moved on two fronts. First, they have alleged that in excess of 979 signatures supporting the initiative petition were forged or are otherwise invalid which renders the number of required signatures of legal voters insufficient. They further contend that the ballot title is misleading due to various omissions and misstatements in its terms.

Respondent W.J. "Bill" McCuen, Secretary of State, denies the claims but does assert that allegations of misleading tendencies in the ballot title are questions of law for this court to decide. Intervenor Committee for a Safe Workplace, which sponsored the initiative petition, also denies the claims for relief and contends that the verification of signatures used by the Secretary of State substantially complied with Amendment 7.

The popular name and ballot title of the proposed amendment, as certified, read:

(Popular Name)

AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO RESTRUCTURE THE WORKERS' COMPENSATION COMMISSION AND REVISE WORKERS' COMPENSATION LAW

(Ballot Title)

AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO PROVIDE THAT THE ARKANSAS WORKERS' COMPENSATION COMMISSION (WHICH UNDER THIS AMENDMENT WILL BE AN INDEPENDENT CONSTITUTIONAL BODY) SHALL BE MADE UP OF THREE COMMISSIONERS (TWO COMMISSIONERS AND A CHAIRMAN), TO BE ELECTED AT LARGE ON A PARTISAN BASIS BY THE ELECTORS OF THE STATE BEGINNING WITH THE GENERAL ELECTION OF 1996; PROVIDING FOR FOUR YEAR TERMS OF COMMISSIONERS; PROVIDING THAT COMMIS-

SIONERS MAY ONLY BE REMOVED FROM OFFICE BY THE IMPEACHMENT PROCEDURES OF THE ARKANSAS CONSTITUTION; REQUIRING THE GOVERNOR TO FILL VACANCIES OCCURRING ON THE COMMISSION; PROHIBITING ANY COMMISSIONER SO APPOINTED FROM BEING A CANDIDATE FOR COMMISSIONER AT THE NEXT GENERAL ELECTION; PROHIBITING ANY COMMISSIONER IN OFFICE AT ANY TIME FROM PASSAGE OF THE AMENDMENT UNTIL JANUARY 15, 1997 FROM BEING A CANDIDATE FOR COMMISSIONER AT THE GENERAL ELECTION OF 1996; REQUIRING APPOINTED COMMISSIONERS TO BE APPROVED BY THE SENATE DURING REGULAR SESSIONS; SETTING THE QUALIFICATIONS OF COMMISSIONERS AND THE CHAIRMAN; PROVIDING THAT NO CANDIDATE FOR COMMISSIONER SHALL BE CONSIDERED A CANDIDATE FOR JUDICIAL OFFICE; AUTHORIZING THE GENERAL ASSEMBLY TO SET THE SALARY, EXPENSES, AND BENEFITS OF THE COMMISSIONERS, TO BE PAYABLE FROM THE WORKERS' COMPENSATION FUND; REQUIRING THE SALARIES OF COMMISSIONERS TO BE AT LEAST EQUAL TO THE SALARY OF JUDGES ON THE ARKANSAS COURT OF APPEALS; PROVIDING THAT ANY PERSON WHO KNOWINGLY MAINTAINS AN UNSAFE WORK ENVIRONMENT SHALL NOT BE IMMUNE FROM SUIT FOR DAMAGES FOR RESULTING INJURY OR DEATH OF A WORKER; AUTHORIZING AN INJURED EMPLOYEE TO CHANGE PHYSICIANS ONE TIME IF THE EMPLOYER OR INSURANCE CARRIER HAS SELECTED A PHYSICIAN; AUTHORIZING CHANGE OF PHYSICIAN IF THE EMPLOYEE HAS SELECTED THE PHYSICIAN ONLY UPON A SHOWING OF A VALID REASON FOR THE CHANGE; PROVIDING THAT DISABILITY BENEFITS FOR INJURED EMPLOYEES SHALL NOT EXCEED 66 2/3% OF THE EMPLOYEE'S AVERAGE WEEKLY WAGE IF THE EMPLOYEE HAS NO DEPENDENTS AND 75% IF THE INJURED EMPLOYEE HAS A DEPENDENT, SUBJECT TO A MAXIMUM BENEFIT

SET BY THE GENERAL ASSEMBLY; PROVIDING HOWEVER THAT THE MAXIMUM WEEKLY DISABILITY BENEFIT SHALL NOT BE LOWER THAN THE STATE AVERAGE WEEKLY WAGE FOR THE YEAR PRECEDING THE YEAR IN WHICH THE INJURY OR DEATH OCCURS; REQUIRING THE COMMISSION TO CONSIDER WAGE EARNING LOSS IN ADDITION TO FUNCTIONAL LOSS IN ASSESSING PERMANENT DISABILITY AND TO CONSIDER THE INJURED EMPLOYEE'S OPPORTUNITIES FOR EMPLOYMENT IN LIGHT OF HIS OR HER INJURY, AGE, EDUCATION AND WORK HISTORY; PROVIDING THAT IF AN EMPLOYER DOES NOT PROVIDE COMPENSATION WITHIN 15 DAYS OF AN INJURY AND CONTINUE PAYMENT WHEN DUE, THE CLAIM SHALL BE DEEMED CONTROVERTED; REQUIRING EMPLOYERS TO COVER EMPLOYMENT INJURIES WITHOUT REGARD TO FAULT, INCLUDING OCCUPATIONAL DISEASES, MENTAL CONDITIONS AND INFECTIONS ARISING OUT OF EMPLOYMENT; PROHIBITING THE ENACTMENT OF SPECIAL EXCEPTIONS FOR EMPLOYMENT INJURIES EXCEPT THOSE CAUSED BY ALCOHOL, ILLEGAL DRUGS OR MISUSED PRESCRIPTION DRUGS; PROVIDING THAT WHEN AN EMPLOYMENT INJURY AGGRAVATES A PREEXISTING CONDITION, THE ENTIRE RESULTING CONDITION SHALL BE COMPENSABLE; RENDERING COMPENSABLE A DISABILITY OR INFIRMITY RESULTING FROM THE REASONABLE CONSEQUENCES OF AN EMPLOYMENT INJURY; REQUIRING EVIDENCE OF PERMANENT PHYSICAL IMPAIRMENTS TO BE BASED UPON COMMONLY USED MEDICAL STANDARDS; PROHIBITING SPECIAL RESTRICTIONS REGARDING EVIDENCE OR SYMPTOMS THAT MAY BE CONSIDERED; REQUIRING APPROVAL BY THE COMMISSION OF CLAIMANT LEGAL FEES; RESTRICTING LEGAL FEES FOR THE REPRESENTATION OF INJURED EMPLOYEES TO 25% OF ALL SUMS PAID IN RESPECT TO A CLAIM; REQUIRING LEGAL FEES IN CASES IN WHICH THE EMPLOYEE PREVAILS TO BE

PAID BY THE EMPLOYER, INSURANCE COMPANY, OR OTHER RESPONDENT; PROVIDING THAT THE INJURED EMPLOYEE SHALL NOT PAY THE RESPONDENT'S LEGAL FEES UNLESS BAD FAITH IS FOUND; AUTHORIZING A CIVIL CAUSE OF ACTION AGAINST ANY EMPLOYER WHO DISCRIMINATES IN REGARD TO HIRING OR WORK CONDITIONS ON ACCOUNT OF CLAIMS MADE FOR BENEFITS, OR WHO OBSTRUCTS OR IMPEDES CLAIMS FOR BENEFITS; PROHIBITING ANY RECOVERY OR OFFSET BY AN EMPLOYER AGAINST BENEFITS RECEIVED BY AN EMPLOYEE FROM THIRD PARTIES, EXCEPT PURSUANT TO STATUTE; PROHIBITING ANY REDUCTION IN BENEFITS ON ACCOUNT OF SUCH RECEIPT; PROVIDING THAT THE AMENDMENT IS SEVERABLE; PROVIDING THAT THE EFFECTIVE DATE OF THE AMENDMENT IS JANUARY 1, 1995, EXCEPT FOR SECTION 2 (WHICH CALLS FOR THE FIRST ELECTION OF COMMISSIONERS TO BE HELD AT THE GENERAL ELECTION OF 1996); PROVIDING THAT THE AMENDMENT SHALL APPLY ONLY TO INJURIES OCCURRING AFTER JANUARY 1, 1995, AND FOR OTHER PURPOSES.

We begin by observing that this case has been severed into two parts, the factual component which relates to defective signatures and is petitioners' Count I, and the nonfactual component which deals with allegations that the ballot title is misleading and incomplete and which is petitioners' Count II. To assist us in resolving the factual aspects of Count I, we appointed a master, The Honorable Darrell Hickman, by per curiam orders dated September 20 and 27, 1994. The master's charge was to collect evidence and make findings of fact relating to petitioners' arguments that there are defects in the required number of signatures. Judge Hickman filed his findings on October 11, 1994. Briefs were filed by the parties on October 13 and 14, 1994, and the case was set for submission on October 24, 1994.

The nonfactual component concerns sufficiency of the ballot title. Petitioners Bailey and Smith raise several points in support of their argument that the ballot title has misleading tendencies or is incomplete: (1) the ballot title speaks of "restricting

legal fees" when in fact authorized legal fees under the proposed amendment exceed what statutory law currently authorizes; (2) the ballot title omits mention of the fact that legal fees for appeals are not restricted and that the proposed amendment changes statutory law which provides for caps on such fees; (3) the ballot title omits mentioning that the proposed amendment requires a liberal construction of workers' compensation laws to accomplish its remedial purposes which repeals existing statutory law on that point; (4) the ballot title fails to explain that tort actions for knowingly maintaining an unsafe workplace henceforth will be permitted which abolishes the exclusivity of the workers' compensation remedy; and (5) the ballot title fails to explain sufficiently that the General Assembly is limited in what offsets for collateral benefits it can provide against workers' compensation benefits.

The intervenor Committee both in its brief and in oral argument placed much store in the fact that the Attorney General had first modified and then certified the ballot title. The intervenor Committee directs our attention to *Plugge* v. *McCuen*, 310 Ark. 654, 657, 841 S.W.2d 139, 140 (1992) where we said: "The Attorney General's approval of a ballot title raises a presumption as to its sufficiency and only in a clear case should such an approval be held insufficient." The genesis for that language is found in *Fletcher* v. *Bryant*, 243 Ark. 864, 422 S.W.2d 698 (1968). We quoted language from decisions in Colorado and California to the effect that a legitimate presumption should arise in favor of the Attorney General's actions and only in a clear case should a ballot title be held insufficient. *See Say* v. *Baker*, 137 Colo. 155, 322 P.2d 317 (1958); *Epperson* v. *Jordan*, 12 Cal.2d 61, 82 P.2d 445 (1938). In *Mason & Lamb* v. *Jernigan*, 260 Ark. 385, 388, 540 S.W.2d 851, 853 (1976), we referred to the *Fletcher* case and stated that "some significance must be given to the fact that the Arkansas Attorney General approved the ballot title . . . ." *Id.* at 388, 540 S.W.2d at 853. We then cited *Say* v. *Baker, supra,* and *Epperson* v. *Jordan, supra,* in a footnote for the proposition that following an Attorney General's approval "only in a clear case" should a ballot title be held to be insufficient. *Jernigan*, 260 Ark. at 388, 540 S.W.2d at 853.

Seemingly at odds with this precedent is the case of *Gaines* v. *McCuen*, 296 Ark. 513, 758 S.W.2d 403 (1988). In that case,

the Attorney General had also modified the ballot title and then certified it. We concluded with the following statement of the law:

> The respondents contend that the Attorney General's determination of sufficiency mandates deference, pointing to our statement "that only in a clear case, should a title so prepared be held insufficient." The quoted language is from *Mason* v. *Jernigan*, 260 Ark. 385, 540 S.W.2d 851 (1976). We have made other similar statements but they are somewhat illusory. Whether the Attorney General has correctly determined the sufficiency of the name and title is a matter of law to be decided by this Court. It is not at all comparable to a finding of fact by a trial court, which we will set aside only if it is clearly erroneous. ARCP Rule 52(a).

296 Ark. at 519, 758 S.W.2d at 406.

Because of our statements, particularly in *Plugge* v. *McCuen, supra*, and *Gaines* v. *McCuen, supra*, we find it necessary to clarify our standard of review in the aftermath of an Attorney General's modification and certification of a ballot title. We will consider the fact of Attorney General certification and attach some significance to it. However, we will not defer to the Attorney General's opinion or give it presumptive effect. To the extent that language in *Plugge* v. *McCuen, supra*, is at odds with this conclusion, we retreat from that language. In sum, sufficiency of a ballot title is a matter of law to be decided by this Court. Our conclusion is underscored by Amendment 7 to the Arkansas Constitution which grants "original and exclusive" jurisdiction over the sufficiency of statewide petitions to this Court.

We turn then to the ballot title itself. Our standards for reviewing a ballot title for an Amendment 7 initiative have often been stated by this Court. A ballot title must be free of any misleading tendency whether by amplification, omission, or fallacy, and it must not be tinged with partisan coloring. *Plugge* v. *McCuen, supra; Ferstl* v. *McCuen*, 296 Ark. 504, 758 S.W.2d 398 (1988); *Bradley* v. *Hall*, 220 Ark. 925, 251 S.W.2d 470 (1952). In addition, a ballot title must be intelligible, honest, and impartial so that it informs the voters with such clarity that they can cast their ballots with a fair understanding of the issues presented. *Ferstl* v. *McCuen, supra; Leigh* v. *Hall*, 232 Ark. 558,

339 S.W.2d 104 (1960). This Court is liberal in construing Amendment 7 and in determining the sufficiency of a ballot title under that amendment. *Porter* v. *McCuen*, 310 Ark. 562, 839 S.W.2d 512 (1992); *Finn* v. *McCuen*, 303 Ark. 418, 798 S.W.2d 34 (1990); *Dust* v. *Riviere*, 277 Ark. 1, 638 S.W.2d 663 (1982). But if information omitted from the ballot title is an essential fact which would give the voter serious ground for reflection, it must be disclosed. *Finn* v. *McCuen, supra; Gaines* v. *McCuen, supra; Hoban* v. *Hall*, 229 Ark. 416, 316 S.W.2d 185 (1958); *Walton* v. *McDonald*, 192 Ark. 1155, 97 S.W.2d 81 (1936). It is not required that the ballot title contain a synopsis of the proposed amendment, but it should be complete enough to convey an intelligible idea of the scope and import of the proposal. *Plugge* v. *McCuen, supra*; *Bradley* v. *Hall, supra*; *Westbrook* v. *McDonald*, 184 Ark. 740, 43 S.W.2d 356 (1931).

 A fair summary of these cases is that we have slightly different standards of review, depending on whether the allegation made is that information is omitted from the ballot title or that statements in the title are misleading. If we conclude that omitted information would, if included, give the voter serious ground for reflection on how to vote, this is a material omission and the ballot title is fatally deficient. On the other hand, if we conclude that statements contained in the ballot title have a tendency to mislead the voter so as to thwart a fair understanding of the issues presented, the ballot title is likewise insufficient.

Bearing these principles in mind, we address first the issue of attorney fees. The ballot title reads:

> requiring approval by the Commission of claimant legal fees; restricting legal fees for the representation of injured employees to 25% of all sums paid in respect to a claim; requiring legal fees in cases in which the employee prevails to be paid by the employer, insurance company, or other respondent; providing that the injured employee shall not pay the respondent's legal fees unless bad faith is found.

On the same subject, Section 12 of the proposed amendment states in pertinent part:

> Legal fees for attorneys representing injured employees shall not exceed 25% of all sums paid in respect to a claim.

. . . .

> In addition to the fees provided above, if the claimant prevails on appeal, the attorney for the claimant shall be entitled to an additional fee at the full Commission and appellate court levels, the additional fee to be paid by the employer, insurance carrier, or respondent as set respectively by the Commission or appellate court.

Petitioners Bailey and Smith urge that the ballot title is misleading in essentially two respects. Far from being restricted by the 25% cap, the petitioners maintain that 25% of the amount recovered actually increases allowable attorney fees from what the statute presently allows. That statute reads:

> The fees shall not exceed thirty percent (30%) of the first one thousand dollars ($1,000) of compensation, or part thereof, twenty percent (20%) of all sums in excess of one thousand dollars ($1,000), but less than three thousand dollars ($3,000) of compensation, and ten percent (10%) of all sums in excess of three thousand dollars ($3,000) of compensation.

Ark. Code Ann. § 11-9-715(a)(1) (1987). Hence, according to the petitioners, 25% of any amount recovered represents a significant increase in authorized fees.

For the second prong of their argument, petitioners point out that the ballot title is silent on attorney fees available on appeal to the Workers' Compensation Commission or appellate courts. Existing law provides:

> (2) The maximum fees allowable pursuant to this subsection shall be the sum of two hundred fifty dollars ($250) on appeals to the full commission from a decision of the administrative law judge, and the sum of five hundred dollars ($500) on appeals to the Arkansas Court of Appeals or Supreme Court from a decision of the commission.

Ark. Code Ann. § 11-9-715 (b)(2) (1987). The proposed amendment would remove these fee caps altogether, and the ballot title does not touch on this important change.

We are not persuaded that using the words "restrict-

ing legal fees for the representation of injured employees to 25% of all sums paid" is sufficiently misleading in connection with general workers' compensation claims to warrant removal of the issue from the ballot, even though this language would raise most limits currently prescribed by statute. However, the ballot title's failure to reveal the fact that the caps are completely removed on legal fees connected with appeals is a different matter. We have no doubt that this is a material point in that knowledge of this exception to the restriction on fees would give some voters serious ground for reflection on how to cast their ballots. *Finn* v. *McCuen, supra*. And that is the standard we go by in assessing the impact of omitted information.

The clear message sent by the ballot title language *restricting* legal fees to 25% is that *all* legal fees, including legal fees on appeal, will be so limited. In point of fact, just the opposite is the case. The limits are being totally removed on legal fees collectible for appeals. Thus, a second standard comes into play on whether the language has a tendency to mislead. In this regard, the case bears some similarity to *Bradley* v. *Hall, supra*. In that case, we noted that the ballot title stated that the amendment would empower the General Assembly to "limit charges" in addition to interest, when nearly the exact opposite was the case. That proposal in fact would have authorized the General Assembly to legalize service charges and credit price differentials previously regarded as usurious. We concluded that the ballot title had a tendency to mislead and ordered it removed from the ballot. Just as in *Bradley* v. *Hall, supra*, we are convinced that the "restriction" language here has a tendency to mislead with respect to legal fees on appeal.

Petitioners Bailey and Smith point to a second material omission in the ballot title. In the draft submitted by the intervenor Committee to the Attorney General for certification, this clause was included:

> that the Workers' Compensation laws shall be liberally construed in accordance with the remedial purposes of a Workers' Compensation system;

The Attorney General, nevertheless, removed it, and the ballot title as certified does not include this language. The proposed amend-

ment, however, does contain a section on the liberal construction of workers' compensation laws:

> Section 8. Remedial Purpose: All workers' compensation laws, whether established by constitution or statute, shall be liberally construed by any adjudicator in accordance with the remedial purpose of a workers' compensation system.

Petitioners correctly contend that the effect of the language in the proposal would be to repeal that part of Act 796 of 1993, now codified at Ark. Code Ann. § 11-9-704(c)(3) (Supp. 1993), which provides that administrative law judges, the Workers' Compensation Commission, and reviewing courts must construe the statutes *strictly*. Petitioners further contend that this feature is material and essential for a clear understanding of what would be adopted.

Again, our test for gauging materiality and the impact of omitted language in a ballot title is whether knowledge of that language would give the voters a serious basis for reflection on how to cast their ballots. We conclude that it would, and we agree with the petitioners that the Attorney General was wrong to remove this language. We have no hesitancy in determining that the voting public would see this policy language as a directive to adjudicators to view the workers' compensation statutes expansively so as to provide remedies to those injured on the job site. The mandate concerning interpretation included in Section 8 lies at the core of the proposed amendment, and its inclusion in the ballot title was imperative.

We are not unmindful in making this decision that we are requiring additional language in two instances to an already lengthy ballot title. One of the principles, already adduced, that we use to guide us in our review of these matters is that a synopsis of every provision of the proposed amendment is not required. *Plugge* v. *McCuen, supra*. Moreover, our statutes require that certified ballot titles be brief and concise. Ark. Code Ann. § 7-9-107(b) (Repl. 1993). Otherwise, voters could well run afoul of the five minute limit in voting booths when prospective voters are waiting in line. Ark. Code Ann. § 7-5-522 (Repl. 1993). Having said that, the materiality of the two omissions, the ten-

dency to mislead, and the fact that the voters would need this information to make an intelligent decision on the amendment give us no alternative but to conclude that the ballot title is fundamentally misleading. We further observe that although it is not the duty of this court to draft ballot titles, surely in this instance certain verbiage could have been eliminated from the title.

Having determined that the ballot title is deficient on the issue of attorney fees and construction of workers' compensation laws, we need not address the other points raised by the petitioners.

The petition is granted and the Secretary of State is enjoined from canvassing or certifying any returns on the proposal entitled "An Amendment to the Arkansas Constitution to Restructure the Workers' Compensation Commission and Revise Workers' Compensation Law" in connection with the general election to be held on November 8, 1994. The mandate shall issue five days from date of this opinion unless a petition for rehearing is filed in which instance the Clerk of the Supreme Court shall set an expedited briefing schedule.

Petition granted.

HAYS and GLAZE, JJ., dissent.

TOM GLAZE, Justice, dissenting. I dissent. My strong disagreement begins with the majority's inability to follow the long-settled standard of review which this court has applied to ballot title cases for years. In *Fletcher* v. *Bryant*, 243 Ark. 864, 422 S.W.2d 698 (1968), this court thoroughly discussed the significance to be given the fact that the Attorney General approved the ballot title of a proposed measure. This court reviewed other states' ballot title procedures, and determined that the courts in those states spoke in terms of presumptions arising from the approval of ballot titles by those charged with that responsibility. After considerable thought, the *Fletcher* court adopted the rationale employed by courts in those other states and concluded as follows:

> There is a clear implication that the General Assembly intended that presumptions as to sufficiency of a ballot title approved by the Attorney General favor the spon-

sors of a referendum petition inasmuch as the act (Ark. Stat. Ann. § 2-208, adopted in 1943) specifically provides for relief to them, but not to opponents, by petition of this court.

For more than twenty-six years, this court has steadfastly adhered to the above standard of review in ballot title cases. *Mason & Lamb* v. *Jernigan, Sec'y of State*, 260 Ark. 385, 540 S.W.2d 851 (1976); *Becker* v. *Riviere*, 270 Ark. 219, 604 S.W.2d 555 (1980); *Plugge* v. *McCuen*, 310 Ark. 654, 841 S.W.2d 139 (1992). Why this court chooses to abandon this settled rule is beyond my reasoning.

The majority opinion sets out some language in *Gaines* v. *McCuen*, 296 Ark. 513, 758 S.W.2d 403 (1988), and concludes the *Gaines* case is at odds with the cases decided following *Fletcher*. If you shepardize *Fletcher* and *Gaines*, no suggestion appears that *Fletcher* and its progeny has been affected by *Gaines*. Nor does the *Gaines* case indicate as much. All *Gaines* does is emphasize the fact that, while our case law gives deference to the Attorney General's ballot title approval, the supreme court must make the ultimate or final decision as to whether the ballot title is sufficient.

Obviously, the sponsors of a measure, as well as the Attorney General, must first sort through the various provisions and details of a measure, and attempt to determine what must be included in the ballot title. They must then phrase or word the ballot title. In this process, the sponsors and the Attorney General must make choices and discretionary calls, and in doing so, they could unintentionally err by placing or omitting something which might later be said to be misleading to the reader.

In these special ballot title cases, this court wisely decided that, when the state's Attorney General's office has approved the title, a presumption of sufficiency arises and only in a clear case, should a title so prepared be held insufficient. Quite candidly, the majority court today, with little thought and no real study, has set aside a rule of law that was carefully researched and adopted twenty-six years ago and that rule has sustained the trial of time.

If this court is going to change this established ballot title

law, it should first forewarn the voters so they can know the rules they must follow when submitting measures and ballot titles to the Attorney General. Obviously, if the sponsors of the measure in this case had known the Attorney General's approval meant nothing, then they may well have objected to the modifications the Attorney General made to the ballot title they submitted. A great inequity is especially present here since the majority concedes that one of the reasons it is striking the proposed amendment from the ballot is because the Attorney General made a mistake by changing the sponsor's proposed ballot title.[1]

Next, I turn to the majority opinion and what it states are the deficiencies in the ballot title. Summarized, they are as follows:

> 1. The ballot title fails to reveal that legal fees payable on appeals are limited under existing law, but will not be under the proposed measure.

> 2. The ballot title omits a description of a provision contained in the measure which provides that the Workers' Compensation laws shall be liberally construed and fails to show present law provides that reviewing courts must construe workers' compensation laws strictly.

In analyzing the majority's two points, I would first point to the popular name — An Amendment to the Arkansas Constitution to *Restructure* the Workers' Compensation Commission *and Revise* Workers' Compensation Law. (Emphasis added.) The popular name plainly announces to the reader that not only revisions are being proposed to existing workers' compensation law, but an entire restructuring of the Commission will be made, as well. In sum, anyone reading this caption is well aware that major changes in existing workers' compensation law are part and parcel of the proposed amendment.

---

[1]To make matters worse, the sponsors of any proposed measure have absolutely no recourse to or review by this court of a ballot title, rejected or modified by the Attorney General, until *after* their petitions with ballot title are circulated, signed and then filed with the Secretary of State's office. *See Finn* v. *McCuen*, 303 Ark. 418, 798 S.W.2d 34 (1990), (a 4-3 decision, where the court decided that this court's jurisdiction attached only after the petitions are declared sufficient and that determination must be of the sufficiency on both the title *and* the signatures.

The majority opinion calls for more ballot title detail than the law requires. The general rule that a ballot title is sufficient if it identifies the proposed act and fairly alleges its general purpose. *Coleman* v. *Sherrill*, 189 Ark. 843, 75 S.W.2d 248 (1934). Also, not every detail of an amendment or how it will work in every situation need be revealed in the ballot title. *Ferstl* v. *McCuen*, 296 Ark. 504, 758 S.W.2d 398 (1988). Nor does this court require a ballot title to cover or anticipate every possible legal argument that might arise as a result of the proposed amendment. *Plugge* v. *McCuen*, 310 Ark. 654, 841 S.W.2d 139 (1992).

First, the majority court argues that, contrary to petitioners' contention, the proposed measure's ballot title is sufficient where it provides legal fees for the representations of injured employees are restricted to 25% of all sums paid on a claim decided at the trial or commission level. I agree with the majority's holding in this respect. But the majority further concludes the ballot title should have revealed that present statutory caps on legal fees *awarded on appeal* would be removed by the proposed amendment. *See* Ark. Code Ann. § 7-9-715 (1987). What the majority opinion fails to mention is that, under the proposed amendment, attorney fees are awarded only when a claimant *prevails* on appeal, and even then, any fee or fee amount is contingent upon the appellate court's considering the nature, length, and complexity of the services performed, and the benefits result to the claimant. Clearly, legal fees under the proposed measure are not unlimited and remain subject to the review and scrutiny of the courts.

As a practical matter, appellate legal fees pale in comparison with those fees awarded at trials and hearings. Also, the number of appeals from the Commission's decisions in workers' compensation cases fall significantly short of those settled or tried at the trial or commission levels. The majority's attempt to attach materiality to appellate fee awards on workers' compensation cases stretches the imagination.

Considering the length of the proposed amendment and the major changes it calls for, it is unreasonable to expect every detail to be covered by the ballot title. Appellate fees are relatively insignificant, and as is commonly treated in appeals, remain subject to the review of the court. This is hardly the kind of matter

that would mislead a voter in the approval or rejection of an amendment especially when the measure openly announces it is intended to restructure and revise existing workers' compensation law.

In my view, the majority court's second point is even less a problem than the one just discussed. The settled law is that, in determining the sufficiency of a ballot title, this court must be liberal in construing the tenets of Amendment 7. *Plugge* v. *McCuen*, 310 Ark. 654, 841 S.W.2d 139 (1992).

As stated in the majority opinion, the sponsors of the proposed amendment submitted a ballot title which included a clause, stating that workers' compensation laws shall be liberally construed in accordance with the remedial purposes of a workers' compensation system. The Attorney General removed this clause from the ballot title and understandably so. The clause contains a legal standard of construction employed by courts and that standard would mean little to the average voter.

The proposed amendment is comprised of sixteen sections that make many major *substantive* changes in restructuring and revising present workers' compensation law. Amendment 7 does not require every detail or procedural matter to be placed in the ballot title. This court has stated repeatedly over the years that it is difficult to prepare a perfect ballot title — it is sufficient if it informs the voters with such clarity that they can cast their ballot with a fair understanding of the issue presented. *Ferstl* v. *McCuen*, 296 Ark. 504, 758 S.W.2d 398 (1988); *Becker* v. *Riviere*, 277 Ark. 252, 641 S.W.2d 2 (1982); and *Hoban* v. *Hall, Secretary of State*, 229 Ark. 416, 316 S.W.2d 185 (1958).

In rendering the proposed amendment invalid, this court requires the ballot title to meet a much higher standard than that called for by the Arkansas Constitution. This court's rigid standard applied in this case portends the difficulty Arkansas voters will have in placing initiatives on the ballot so the people will have a voice in their government and an opportunity to change it if they feel aggrieved.

HAYS, J., joins this dissent.