Robert W. Buchholz Buchholz Sassin, P.L.L.C. 4000 Republic Center, Tower II 325 N. St. Paul Street Dallas, TX 75201
Dear Mr. Buchholz:
This is in response to your request, on behalf of the Arkansas Casino Corporation, for certification, pursuant to A.C.A. § 7-9-107 (Repl. 1993), of a popular name and ballot title for a proposed amendment to the Arkansas Constitution. A separate party, Mr. Tommy Goodwin, submitted an original request for certification of a popular name and ballot title for the measure at issue, which resulted in my issuance of Opinion 99-176. In that Opinion, I approved the submitted popular name, but rejected the submitted ballot title due to an unresolved ambiguity in the text of the measure. That ambiguity is now clarified in the text of the measure and the ballot title you have submitted. You now seek certification of the following proposed popular name and ballot title for the amended measure:
 POPULAR NAME AN AMENDMENT TO ESTABLISH A STATE LOTTERY; TO PERMIT CHARITABLE BINGO GAMES AND RAFFLES; TO ALLOW ARKANSAS CASINO CORPORATION TO OWN AND OPERATE SIX CASINO GAMBLING ESTABLISHMENTS ONE EACH IN SEBASTIAN, PULASKI, GARLAND, MILLER, CRITTENDEN AND BOONE COUNTIES; AND TO ESTABLISH THE ARKANSAS EDUCATIONAL TRUST FUND AND THE ARKANSAS GAMING COMMISSION.
 BALLOT TITLE AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO ESTABLISH A STATE-RUN LOTTERY, TO BE REGULATED BY THE ARKANSAS GAMING COMMISSION; PROVIDING THAT CHARITABLE BINGO GAMES AND RAFFLES MAY BE CONDUCTED AND SHALL BE REGULATED BY THE ARKANSAS GAMING COMMISSION; PROVIDING THAT SIX CASINO GAMBLING ESTABLISHMENTS, TO BE OWNED AND OPERATED BY ARKANSAS CASINO CORPORATION, BE ALLOWED TO IMMEDIATELY BEGIN OPERATIONS ONE EACH TO BE LOCATED IN SEBASTIAN, PULASKI, GARLAND, MILLER, CRITTENDEN AND BOONE COUNTIES; PROHIBITING CASINO GAMING IN ANY OTHER COUNTY; PROHIBITING THE SALE OF LOTTERY TICKETS, PARTICIPATION IN BINGO, RAFFLES OR CASINO GAMING TO ANY PERSON UNDER THE AGE OF 21; DEFINING CASINO GAMING AS ANY GAME PLAYED WITH CARDS, DICE, EQUIPMENT OR ANY MECHANICAL, ELECTROMECHANICAL OR ELECTRONIC DEVICE OR MACHINE FOR MONEY, PROPERTY, CHECKS, CREDIT OR ANY REPRESENTATIVE OF VALUE; REQUIRING ALL STATE LOTTERY REVENUE, LESS EXPENSES AND PRIZES, TO BE PAID TO THE ARKANSAS EDUCATIONAL TRUST FUND; REQUIRING PAYMENT OF A 15% TAX ON THE NET GAMING REVENUE OF ANY CASINO, TO BE ALLOCATED AS FOLLOWS: 80% TO THE STATE'S GENERAL FUND FOR THE PURPOSE OF REDUCING OR ELIMINATING THE GROSS RECEIPTS TAX ON FOOD PURCHASED IN A RETAIL FOOD STORE, 10% TO THE ARKANSAS EDUCATIONAL TRUST FUND; 5% OF THE TAX OF ONE CASINO TO THE COUNTY IN WHICH THAT CASINO IS LOCATED AND IF THE CASINO IS IN A CITY LIMITS THEN THIS REVENUE SHALL BE DIVIDED EQUALLY BETWEEN THE COUNTY AND THE CITY, 1% TO THE ARKANSAS COMPULSIVE GAMBLING FOUNDATION FOR THE TREATMENT, PUBLIC AWARENESS, TRAINING, RESEARCH AND PREVENTION OF GAMBLING ADDITION [SIC]; 4% TO THE STATE'S GENERAL FUND FOR THE OPERATIONAL COSTS OF THE ARKANSAS GAMING COMMISSION; PROHIBITING OTHER TAXES OR FEES ON THE BUSINESS OPERATIONS, GROSS REVENUES, NET GAMING REVENUES OR INCOME OF OR FROM CASINO GAMING; ESTABLISHING THE ARKANSAS EDUCATIONAL TRUST FUND TO PROVIDE GRANTS TO QUALIFIED HIGH SCHOOL GRADUATES FOR POST-SECONDARY EDUCATION; REQUIRING THAT GRANT RECIPIENTS MAINTAIN A "B" GRADE AVERAGE, AS DEFINED BY THE ARKANSAS DEPARTMENT OF HIGHER EDUCATION; DEFINING POST-SECONDARY EDUCATION AS THE PURSUIT OF AN UNDERGRADUATE DEGREE AT A PUBLIC OR PRIVATE UNIVERSITY, COLLEGE, COMMUNITY COLLEGE OR VOCATIONAL-TECHNICAL SCHOOL LOCATED IN ARKANSAS PRE-KINDERGARTEN EDUCATIONAL PROGRAMS, TUTORIAL PROGRAMS FOR PRIMARY AND SECONDARY STUDENTS [SIC]; CREATING THE ARKANSAS GAMING COMMISSION, WHOSE MEMBERS SHALL BE APPOINTED BY THE GOVERNOR WITH THE ADVICE AND CONSENT OF THE SENATE, WHO SHALL ESTABLISH AND OPERATE THE STATE LOTTERY, SHALL LICENSE AND REGULATE CHARITABLE BINGO AND RAFFLES, AND SHALL AUDIT THE OPERATIONS OF THE CASINOS TO INSURE THAT ALL CASINO TAXES DUE TO THE STATE ARE PAID; PROVIDING FOR JUDICIAL REVIEW OF COMMISSION'S DECISIONS OR ACTIONS; ALLOWING A CASINO TO OPERATE ANY DAY FOR ANY PORTION OF THE DAY; ALLOWING THE SERVING OF ALCOHOLIC BEVERAGES IN CASINOS DURING ALL HOURS THEY OPERATE; PROHIBITING CASINO GAMING EXCEPT FOR AUTHORIZED LOCATIONS OPERATED BY ARKANSAS CASINO CORPORATION; PERMITTING THE SHIPMENT OF GAMBLING DEVICES; RENDERING THE PROVISIONS OF THE AMENDMENT SEVERABLE; PROVIDING THAT THE AMENDMENT IS NOT INTENDED TO AFFECT PARI-MUTUEL WAGERING AS CURRENTLY AUTHORIZED; DECLARING INAPPLICABLE ALL CONSTITUTIONAL PROVISIONS AND LAWS TO THE EXTENT THEY CONFLICT WITH THE AMENDMENT; PROHIBITING THE GENERAL ASSEMBLY FROM ENACTING ANY LEGISLATION REGARDING CASINO GAMING; AND DECLARING THE AMENDMENT OPERATIVE UPON PASSAGE.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to approve and certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, he may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Applying the above precepts, it is my conclusion, as in Opinion 99-176, that the submitted popular name should be approved. In my judgment, however, I must substitute a more complete, suitable and accurate ballot title for the one proposed. The following ballot title is hereby certified in order to insure that, when construed together, the popular name and ballot title accurately set forth the purpose of the proposed amendment:
 BALLOT TITLE AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO: 1) ESTABLISH A STATE-RUN LOTTERY, TO BE OPERATED AND REGULATED BY THE ARKANSAS GAMING COMMISSION; 2) AUTHORIZE CHARITABLE BINGO AND RAFFLES IN ARKANSAS AS LICENSED AND REGULATED BY THE ARKANSAS GAMING COMMISSION; AND 3) IMMEDIATELY AUTHORIZE SIX CASINO GAMBLING ESTABLISHMENTS, TO BE OWNED AND OPERATED BY "ARKANSAS CASINO CORPORATION" (A PRIVATE FOR-PROFIT CORPORATION), ONE EACH TO BE LOCATED IN SEBASTIAN, PULASKI, GARLAND, MILLER, CRITTENDEN AND BOONE COUNTIES, THE OPERATIONS OF WHICH SHALL BE AUDITED BY THE ARKANSAS GAMING COMMISSION FOR THE SOLE PURPOSE OF INSURING THAT CASINO TAXES DUE THE STATE ARE PAID, BUT WHICH SHALL NOT OTHERWISE BE REGULATED BY THE GAMING COMMISSION OR SUBJECT TO ANY CASINO-RELATED LEGISLATION OF THE GENERAL ASSEMBLY; PROHIBITING CASINO GAMING IN ANY OTHER COUNTY OR AT ANY OTHER THAN THE AUTHORIZED LOCATIONS OPERATED BY ARKANSAS CASINO CORPORATION; PROHIBITING PERSONS UNDER THE AGE OF 21 FROM PURCHASING LOTTERY TICKETS OR PARTICIPATING IN BINGO, RAFFLES OR CASINO GAMING; REQUIRING AT LEAST 50% OF STATE LOTTERY REVENUE TO BE DISTRIBUTED AS PRIZES, AT LEAST 45% OF LOTTERY REVENUE TO BE PAID TO THE ARKANSAS EDUCATIONAL TRUST FUND AND NO MORE THAN 5% FOR THE EXPENSES OF THE LOTTERY; REQUIRING PAYMENT OF A 15% TAX ON THE" NET GAMING REVENUE" (AS DEFINED) OF ANY CASINO, TO BE ALLOCATED AS FOLLOWS: 80% TO THE STATE'S GENERAL FUND FOR THE PURPOSE OF REDUCING OR ELIMINATING THE GROSS RECEIPTS TAX ON FOOD PURCHASED IN A RETAIL FOOD STORE, WITH ANY EXCESS RETURNED TO THE GENERAL FUND, 10% TO THE ARKANSAS EDUCATIONAL TRUST FUND, 5% OF THE TAX OF ONE CASINO TO THE COUNTY IN WHICH THAT CASINO IS LOCATED AND IF THE CASINO IS IN A CITY LIMITS THEN THIS REVENUE SHALL BE DIVIDED EQUALLY BETWEEN THE COUNTY AND THE CITY, 1% TO THE ARKANSAS COMPULSIVE GAMBLING FOUNDATION FOR THE TREATMENT, PUBLIC AWARENESS, TRAINING, RESEARCH AND PREVENTION OF GAMBLING ADDICTION, AND 4% TO THE STATE'S GENERAL FUND FOR THE OPERATIONAL COSTS OF THE ARKANSAS GAMING COMMISSION; PROHIBITING THE GENERAL ASSEMBLY FROM REDUCING LOCAL OR STATE FUNDING BECAUSE OF CASINO TAX REVENUE; PROHIBITING ANY OTHER STATE OR LOCAL TAXES, FEES OR ASSESSMENTS ON THE FURNITURE, FIXTURES, EQUIPMENT, PROPERTY, BUSINESS OPERATIONS, GROSS REVENUES, NET GAMING REVENUES OR INCOME OF ARKANSAS CASINO CORPORATION FROM OR USED IN CASINO GAMING; ESTABLISHING THE ARKANSAS EDUCATIONAL TRUST FUND, REGULATED AND ADMINISTERED BY THE DEPARTMENT OF HIGHER EDUCATION, TO PROVIDE GRANTS TO QUALIFIED HIGH SCHOOL GRADUATES FOR POST-SECONDARY EDUCATION; REQUIRING GRANT RECIPIENTS TO MAINTAIN A "B" GRADE AVERAGE; DEFINING POST-SECONDARY EDUCATION AS THE PURSUIT OF AN UNDERGRADUATE DEGREE AT A PUBLIC OR PRIVATE UNIVERSITY, COLLEGE, OR COMMUNITY COLLEGE OR A DEGREE FROM A VOCATIONAL-TECHNICAL SCHOOL LOCATED IN ARKANSAS; REQUIRING NOT LESS THAN 24% OF THE EDUCATIONAL TRUST FUND TO BE USED TO EXPAND PRE-KINDERGARTEN EDUCATIONAL PROGRAMS AND TUTORIAL PROGRAMS FOR PRIMARY AND SECONDARY STUDENTS AS ADMINISTERED BY THE ARKANSAS DEPARTMENT OF EDUCATION; CREATING THE ARKANSAS GAMING COMMISSION, WHOSE MEMBERS SHALL BE APPOINTED BY THE GOVERNOR WITH THE ADVICE AND CONSENT OF THE SENATE, WHO SHALL: 1) ESTABLISH AND OPERATE THE STATE LOTTERY; 2) LICENSE AND REGULATE CHARITABLE BINGO AND RAFFLES; AND 3) AUDIT THE OPERATIONS OF THE CASINOS FOR THE SOLE PURPOSE OF INSURING THAT ALL CASINO TAXES DUE TO THE STATE ARE PAID; PROVIDING FOR JUDICIAL REVIEW OF THE COMMISSION'S DECISIONS OR ACTIONS; ALLOWING A CASINO TO OPERATE ANY DAY FOR ANY PORTION OF THE DAY; ALLOWING THE SELLING OR FREE PROVISION OF ALCOHOLIC BEVERAGES IN CASINOS DURING ALL HOURS THEY OPERATE BUT OTHERWISE REQUIRING ADHERENCE TO ALL ALCOHOLIC BEVERAGE CONTROL BOARD REGULATIONS; PERMITTING THE SHIPMENT OF GAMBLING DEVICES INTO AUTHORIZED COUNTIES FOR PURPOSES OF FEDERAL LAW; RENDERING THE PROVISIONS OF THE AMENDMENT SEVERABLE; PROVIDING THAT THE AMENDMENT IS NOT INTENDED TO AFFECT PARI-MUTUEL WAGERING AS CURRENTLY AUTHORIZED; DECLARING INAPPLICABLE ALL CONSTITUTIONAL PROVISIONS AND LAWS TO THE EXTENT THEY CONFLICT WITH THE AMENDMENT; REQUIRING THE GENERAL ASSEMBLY TO ENACT LEGISLATION SO THAT THE STATE LOTTERY AND CHARITABLE BINGO AND RAFFLES MAY BEGIN AT THE EARLIEST POSSIBLE TIME, BUT PROHIBITING THE GENERAL ASSEMBLY FROM ENACTING ANY LEGISLATION REGARDING CASINO GAMING; AND DECLARING THE AMENDMENT OPERATIVE UPON PASSAGE.
I reiterate that the Attorney General's responsibility under A.C.A. §7-9-107 is limited to providing a suitable and correct popular name and ballot title that constitute an impartial summary of your proposed amendment. I believe a cautionary note is warranted, however, due to the significance of the subject matter undertaken, i.e., legalized gaming, and the complexity and far-reaching effects of this proposed amendment. You should be aware that Arkansas case law reflects a direct correlation between the length and complexity of initiated constitutional amendments and their susceptibility to a successful ballot title challenge. In addition, the Arkansas Supreme Court does not accord any presumptive validity to my certification of popular names and ballot titles. SeeBailey v. McCuen, 318 Ark. 277, 884 S.W.2d 938 (1994). As a consequence, my certification of a popular name and ballot title for your measure may not be taken as an indication of sufficiency.
Pursuant to A.C.A. § 7-9-108, instructions to canvassers and signers must precede every petition, informing them of the privileges granted by the Constitution and of the penalties imposed for violations of this act. Enclosed herewith, over the signature of the Attorney General, are instructions that should be incorporated in your petition prior to circulation.
Sincerely,
MARK PRYOR Attorney General
Enclosure