Oscar Stilley Central Mall Plaza Suite 516 5111 Rogers Avenue Fort Smith, AR 72903-2041
Dear Mr. Stilley:
This is in response to your request for certification of a popular name and ballot title, pursuant to A.C.A. § 7-9-107 (Repl. 1993), for a proposed constitutional amendment. You previously made a similar submission which resulted in Attorney General Opinion 99-199, wherein I declined to certify the proposed popular name and ballot title due to several ambiguities in the text of your measure. You have changed the text of your proposed amendment, and have submitted for my approval the following popular name and ballot title:
 POPULAR NAME AN AMENDMENT PROVIDING THAT PERSONS INCARCERATED IN ARKANSAS PRISONS MUST BY PRODUCTIVE LABOR PAY THE FULL COSTS OF THEIR INCARCERATION, AS A CONDITION OF RECEIVING CREDIT FOR GOOD TIME OR PAROLE ELIGIBILITY, PROVIDING FOR A COMMISSIONER OF CORRECTIONS TO MANAGE THE ARKANSAS PRISON SYSTEM, PROVIDING THAT CERTAIN PRISON INMATES MAY BE EMPLOYED BY ONE OR MORE PRIVATE COMPANIES IN ROAD CONSTRUCTION OR PRIVATE ENTERPRISE OFF PRISON GROUNDS, AND FOR OTHER PURPOSES
 BALLOT TITLE AN AMENDMENT TO THE ARKANSAS CONSTITUTION PROVIDING THAT ADULT INMATES AT ARKANSAS PRISONS SHALL NOT BE ENTITLED TO PAROLE OR GOOD TIME, EXCEPT FOR INMATES WHO BY PRODUCTIVE LABOR PAY THE FULL COST OF THEIR INCARCERATION; PROVIDING THAT INMATES WHO WORK BUT EARN LESS THAN THE AMOUNT REQUIRED TO PAY ALL COSTS OF THEIR INCARCERATION SHALL BE GRANTED EXTRA PRIVILEGES ACCORDING TO PRISON POLICIES; CREATING THE POSITION OF COMMISSIONER OF CORRECTION (HEREINAFTER SOMETIMES COMMISSIONER), TO BE FILLED BY NON-PARTISAN ELECTION AS SOON AS REASONABLY POSSIBLE AFTER PASSAGE OF THE AMENDMENT, AND AT EACH REGULARLY SCHEDULED STATEWIDE ELECTION THEREAFTER; PROVIDING THAT THE SOLE COMPENSATION OF SUCH COMMISSIONER SHALL BE 3% OF THE NET REDUCTION OF THE COSTS OF THE ARKANSAS DEPARTMENT OF CORRECTION (HEREINAFTER ADC) BELOW COSTS IN THE PREVIOUS FISCAL YEAR, PLUS 3/10TH OF 1% OF THE REDUCTION OF THE COST OF THE OPERATION OF THE ADC, FROM THE EXPENDITURES MADE IN FISCAL YEAR 1999, PLUS 10% OF ANY NET PROFITS OF THE ADC; PROVIDING THAT THE COMMISSIONER SHALL BE AUTHORIZED TO ENTRUST PRISON INMATES TO ARKANSAS CORRECTION CORPORATION (HEREINAFTER ACC), OR ANY OTHER ENTITY AUTHORIZED BY THE AMENDMENT TO BE ENTRUSTED WITH INMATES; GRANTING THE COMMISSIONER MAXIMUM FLEXIBILITY IN THE OPERATION AND STAFFING OF PRISONS; PROVIDING THAT THE COMMISSIONER IS AUTHORIZED TO PROMULGATE ALL REGULATIONS OF ACC, OR ANY OTHER ENTITY ENTRUSTED WITH INMATES, AS TO THE LOCATION AND TYPE OF HOUSING TO BE USED FOR INMATES, OR OTHERWISE DEEMED NECESSARY TO REDUCE THE RISK OF ESCAPE, AND REGULATIONS WITH RESPECT TO THE GRANTING OF GOOD TIME AND PAROLE; PROVIDING THAT THE COMMISSIONER MAY PRESCRIBE FORMS FOR THE CONTRACTS MADE BETWEEN ACC OR OTHER AUTHORIZED ENTITIES, AND INMATES; AUTHORIZING THE COMMISSIONER TO CONTRACT FOR THE HOUSING OF INMATES FROM OTHER STATES, WHERE SUCH CONTRACTS ARE ECONOMICALLY ADVANTAGEOUS TO ARKANSAS TAXPAYERS; AUTHORIZING THE EMPLOYMENT OF INMATES AT PRODUCTIVE LABOR BY THE ADC, AN EXISTING STATE AGENCY, OR THE ACC, AN EXISTING PRIVATE FOR PROFIT CORPORATION ORGANIZED FOR THE PURPOSE OF EMPLOYING INMATES AND TEACHING THRIFT, INDUSTRY, AND RESPECT FOR THE PERSON AND PROPERTY OF OTHERS TO PRISON INMATES; PROVIDING THAT ACC IS AUTHORIZED TO TAKE PHYSICAL CUSTODY OF INMATES DETERMINED BY THE COMMISSIONER OF CORRECTION TO BE QUALIFIED FOR EMPLOYMENT OUTSIDE PRISON PROPERTY, AND TO PROVIDE HOUSING FOR SAID INMATES AT ANY PLACE APPROVED BY THE COMMISSIONER; AUTHORIZING THE EMPLOYMENT OF INMATES BY OTHER SUITABLY BONDED ENTITIES IF ACC FAILS TO REDUCE THE COST OF ADC, TO ARKANSAS TAXPAYERS, TO NOT MORE THAN $50,000,000 ANNUALLY, FOR ANY FISCAL YEAR ENDING AFTER JULY 1, 2004; PROVIDING THAT THE ADC MAY NOT DEMAND OR RECEIVE COMPENSATION FOR THE PLACEMENT OF INMATES WITH ACC OR OTHER AUTHORIZED ENTITY, OTHER THAN THE SECURE HOUSING AND NECESSARY CARE OF THE INMATE, EXCEPT WHERE THE INMATES ARE USED FOR HIGHWAY CONSTRUCTION; PROVIDING THAT INMATES ENTRUSTED TO ACC OR OTHER AUTHORIZED ENTITY MAY BE EMPLOYED AT ANY SUITABLE EMPLOYMENT EXCEPT OPERATING PUBLIC RETAIL ESTABLISHMENTS, SCHOOLS, DAY CARE FACILITIES, HOSPITALS, OR SIMILAR FACILITIES IN WHICH THE PUBLIC'S INTEREST IN SAFETY AND SECURITY CANNOT BE REASONABLY PROTECTED; PROVIDING THAT INMATES ENTRUSTED TO ACC OR OTHER AUTHORIZED ENTITY MAY NOT MINGLE WITH THE GENERAL PUBLIC UNSUPERVISED; PROVIDING THAT SUFFICIENTLY PRODUCTIVE INMATES MAY BE PROVIDED WITH READJUSTMENT ACCOUNTS, FROM WHICH THE EXPENSES FOR THE HEALTH, EDUCATION, AND WELFARE OF THE PRISONER MAY BE PAID, THE REMAINDER OF WHICH SHALL BE USED FOR THE BENEFIT OF THE PRISONER UPON RELEASE, IN HIS OR HER TRANSITION TO FREE SOCIETY; PROVIDING THAT ACC, AND ANY OTHER ENTITY ENTRUSTED WITH THE CUSTODY OF INMATES FOR PURPOSES OF EMPLOYMENT, SHALL MAINTAIN ADEQUATE PHYSICAL SECURITY TO PREVENT ESCAPES OR INJURY TO PRIVATE PERSONS OR PROPERTY; PROVIDING FURTHER THAT ALL SUCH ENTITIES SHALL POST BOND AND BE LIABLE FOR INTENTIONAL OR NEGLIGENT DAMAGES CAUSED BY INMATES IN THEIR CUSTODY, NOT TO EXCEED $100,000 PER PERSON PER INCIDENT, UNTIL JANUARY 1, 2003, AT WHICH TIME THE MAXIMUM LIABILITY PER PERSON PER INCIDENT SHALL INCREASE TO $1,000,000; PROVIDING THAT INMATES HELD FOR VIOLENT FELONIES SHALL NOT BE ELIGIBLE FOR EMPLOYMENT OUTSIDE PRISON BOUNDARIES UNLESS AND UNTIL THE COMMISSIONER DETERMINES THAT THE PRISONER HAS MADE SUBSTANTIAL CHANGES THAT MATERIALLY REDUCE THE RISK OF FURTHER VIOLENCE AGAINST PERSONS OR PRIVATE PROPERTY; EXCLUDING INMATES HELD UNDER SENTENCES OF LIFE WITHOUT PAROLE OR DEATH SENTENCES FROM ELIGIBILITY FOR EMPLOYMENT OFF PRISON PROPERTY UNDER ANY CIRCUMSTANCES; PROVIDING THAT ALL SAVINGS OF TAX MONIES FROM THE REDUCTION OF COSTS OF PRISON OPERATIONS SHALL BE USED FOR ROADS AND HIGHWAYS; PROVIDING THAT INMATES MAY BE USED DIRECTLY IN HIGHWAY CONSTRUCTION, AND THAT THE DEPARTMENT OF CORRECTION SHALL RECEIVE CREDIT FOR THE VALUE OF SUCH CONSTRUCTION IN THE CALCULATION OF ITS PROFITS AND LOSSES; PROVIDING THAT THE STATE OF ARKANSAS SHALL NOT MAKE OR ENFORCE ANY LAW CONCERNING PRISON CALCULATION OF ITS PROFITS AND LOSSES; PROVIDING THAT THE STATE OF ARKANSAS SHALL NOT MAKE OR ENFORCE ANY LAW CONCERNING PRISON OPERATIONS, IF SAID LAW INCREASES THE COSTS OF THE ADC OR LIMITS OPPORTUNITIES TO ENHANCE THE REVENUE OF THE SYSTEM, UNLESS THE PROPONENT OF SAID STATE LAW PROVES THAT THE LAW OR REGULATION IS REASONABLY NECESSARY AND EFFECTIVE TO PROTECT A SUBSTANTIAL STATE INTEREST, AND THE OPPONENT OF SAID LAW OR REGULATION FAILS TO PROVE THAT AN ALTERNATIVE LESS COSTLY TO THE CITIZENRY WOULD REASONABLY PROTECT THE STATE'S INTEREST; PROVIDING FOR LIBERAL CONSTRUCTION IN FAVOR OF THE TAXPAYER, SEVERABILITY, AND GENERAL REPEALER OF CONFLICTING PROVISIONS; PROVIDING THAT THE AMENDMENT IS SELF-EXECUTING AND SHALL TAKE EFFECT JANUARY 1, 2001, EXCEPT AS OTHERWISE PROVIDED; AND FOR OTHER PURPOSES.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to approve and certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
It is my conclusion, based upon the above precepts, that your proposed popular name and ballot title are insufficient due to the following remaining ambiguities in the text of your measure:
 1) Section 3 (b)(2) of your proposed amendment states in pertinent part that the Commissioner of Correction shall be authorized to "entrust prison inmates to Arkansas Correction Corporation [ACC]. . . ." Section 4(a) then states, specifically, as to employment of inmates, that ACC can take custody of "inmates determined by the Commissioner of Correction to be qualified for employment outside prison property. . . ." I am uncertain, in light of these two provisions, whether the Commissioner's authority regarding the placement of prisoners with ACC is limited to those who are deemed qualified for outside employment, or whether the Commissioner has general authority to entrust inmates to ACC. This should be clarified for proper reflection in the ballot title.
 2) Section 3(b)(2) authorizes the Commissioner to prescribe" forms upon which contracts between ACC and prisoners are made. . . ." This appears to be the only reference to any contract(s) involving ACC. (Compare
Section 3(b)(3) regarding Commissioner's authority to contract for the housing of inmates from other states.) This raises the question whether there is to be any contract or other agreement between the Commissioner or the Department of Correction and ACC. Additionally, I am uncertain whether the Commissioner's authority to "prescribe forms" for contracts between ACC and prisoners includes the authority to prescribe the terms of such contracts including, for instance, compensation. The proposed amendment appears to be silent regarding compensation of ACC. This information may be considered material and essential, given the extent of ACC's authority with respect to the housing and employment of prisoners.
 3) What is the impact of this proposed amendment on current law? The proposed extensive revision of current law with respect to, inter alia, parole eligibility and prison operations, including but not limited to housing of prisoners, no doubt significantly impacts the various State boards and departments that are currently vested with authority in this regard. The question arises whether the ballot title is in any way misleading by omission in its failure to alert the voter to the changes in supervision and control that would be effected by the amendment. Prudence dictates that this matter be addressed.
In my judgment, a ballot title that fails to address the above points would likely be viewed as misleading. These points must be clarified and included in your ballot title. My statutory duty, under these circumstances, is to reject your submission, stating my reasons therefor, and instruct you to redesign the proposed measure, and ballot title and popular name. A.C.A. § 7-9-107(c). You may, after clarification of the issues discussed above, resubmit your proposed amendment, along with a new proposed popular name and ballot title, at your convenience. I will then be pleased to perform my statutory duties in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General