Mr. Barry L. Emigh 1104 7th Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
You have requested certification, pursuant to A.C.A. § 7-9-107, of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted various similar measures, some of which I rejected due to ambiguities in the text of your proposed amendments. See
Ops. Att'y Gen. Nos. 2002-140; 2002-118, 2002-102, 2002-077, 2002-042, 2002-026, 2002-001, 2001-380, 2001-358, 2001-341, 2001-173, 2001-110, 2001-095 and 2001-074. My office has revised and certified popular names and ballot titles for three similar measures, as evidenced by Ops. Att'y Gen. Nos. 2002-208; 2001-129; and 2001-196. You have since made additional changes to your measure and have submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 POPULAR NAME AN AMENDMENT AUTHORIZING BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE, AUTHORIZING THE OPERATION OF GAMBLING BY BARRY LEE EMIGH AND HIS TRANSFEREES, EMPOWERING THE GENERAL ASSEMBLY TO OPERATE LOTTERIES, TO CALL A SPECIAL SESSION AND PROVIDING A BOARD TO APPOINT COMMISSIONERS
 BALLOT TITLE AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE; EMPOWERING THE GENERAL ASSEMBLY WITHOUT CONSENT OF THE GOVERNOR TO OPERATE LOTTERIES AND COOPERATE TO OPERATE LOTTERIES WITH OTHER STATES WHICH SIGNIFICANTLY CHANGES CURRENT LAWS EFFECTING GAMBLING; AUTHORIZING BARRY LEE EMIGH AND HAROLD GLEN MARTIN AS EQUAL PARTNERS TO OPERATE, HIRE AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING WITHOUT LICENSE, OR FEE BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF, ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF SEBASTIAN, CRAWFORD, JEFFERSON, PULASKI, GARLAND, MILLER, CRITTENDEN, MISSISSIPPI, BENTON AND OUACHITA WITH SUCH STRUCTURE LOCATED WITHIN THOSE COUNTIES OR WITHIN ANY CITY AND TOWN WITHIN THOSE COUNTIES WITH THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOLIC BEVERAGES WITHOUT LICENSE, OR FEE BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF, WITHIN THOSE STRUCTURES USED FOR GAMBLING ONLY DURING THE OPERATION OF GAMBLING (INCLUDING THOSE COUNTIES, CITIES AND TOWNS IN WHICH THE SALE OF ALCOHOLIC BEVERAGES IS OTHERWISE PROHIBITED); EXEMPTING THE TRANSFER OF THE GAMBLING OPERATION AND PROPERTY USED FOR GAMBLING WITH OR WITHOUT SALE TO ANY PERSON, COMPANY OR CORPORATION FROM COST OR APPROVAL BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF; REQUIRING THE GAMBLING OPERATOR(S), ANNUALLY PAY 34% OF THE "NET PROFIT" TO BE DIVIDED BY AND PAID TO EACH CANVASSER FOR EACH SIGNATURE THE CANVASSERS OBTAINS THAT IS COUNTED AS VALID BY THE SECRETARY OF STATE TO PLACE THIS AMENDMENT ON THE BALLOT WITH SUCH PAYMENTS TRANSFERABLE TO ANY OTHER PERSON;
 REQUIRING THE GAMBLING OPERATOR(S), WITH SALE OF THE GAMBLING OPERATION PAY 34% OF THE SALE AMOUNT FROM ANY PART, OR WHOLE, OF THE GAMBLING OPERATION, LESS PAY OFF OF DEBITS AND INCURRED EXPENSES, TO BE DIVIDED BY AND PAID TO EACH CANVASSER FOR EACH SIGNATURE THEY OBTAIN THAT IS COUNTED AS VALID BY THE SECRETARY OF STATE TO PLACE THIS AMENDMENT ON THE BALLOT WITH NO FURTHER PAYMENTS FROM THE "NET PROFIT" OF THAT PART, OR WHOLE, OF THE GAMBLING OPERATION SOLD; REQUIRING THE GAMBLING OPERATOR(S), ANNUALLY PAY THE STATE 10%, COUNTY WITHIN WHICH GAMBLING IS OPERATED 5% AND CITY, IF APPLICABLE, WITHIN WHICH GAMBLING IS OPERATED 5% OF THE "GROSS PROFIT" EARNED FROM GAMBLING; EXCEPT AS SPECIFIED NO OTHER TAXES OF ANY KIND SHALL BE LEVIED BY THE STATE, OR ANY SUBDIVISION THEREOF, ON THE GAMBLING REVENUE; NO OTHER TAXES, FEES OR ASSESSMENTS OF ANY KIND SHALL BE LEVIED BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF, ON THE STRUCTURE OR CONTENTS THEREIN USED FOR GAMBLING; AUTHORIZING THE LEGAL SHIPMENT OF GAMBLING DEVICES; REQUIRING THE GOVERNOR BY PETITION OF A 3/4 MAJORITY OF BOTH HOUSES OF THE GENERAL ASSEMBLY CALL A "SPECIAL SESSION" OF THE GENERAL ASSEMBLY WHICH SIGNIFICANTLY CHANGES CURRENT LAWS EFFECTING THE" CHECKS AND BALANCES" OF GOVERNMENTAL POWERS; REQUIRING THE GOVERNOR, ATTORNEY GENERAL, SECRETARY OF STATE, SENATE PRO TEM AND HOUSE LEADER BY MAJORITY CONSENT TO APPOINT OR DISMISS ALL COMMISSIONERS WHICH SIGNIFICANTLY CHANGES CURRENT LAWS EFFECTING THE AUTHORITY OF THE GOVERNOR; DEFINING "BINGO" AS THE RISKING OF MONEY ON A GAME PLAYED WITH NUMBERED CARDS CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM TO WIN A PRIZE OR MONEY; DEFINING "RAFFLE" AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE BUT SHALL EXCLUDE MONEY AS A PRIZE; DEFINING "GAMBLING" AS THE RISKING OF MONEY BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH GAMES OF CHANCE, SKILL AND ANY COMBINATION THEREOF, BUT SHALL EXCLUDE THE OPERATION OF A "LOTTERY"; DEFINING "LOTTERY" AS THE "TYPICAL FORM" OF A LOTTERY CHARACTERIZED BY THE ARKANSAS SUPREME COURT WHICH INVOLVES THE SALE OF A LARGE NUMBER OF CHANCES RELATIVE TO THE SELECTION OF A SMALL NUMBER OF WINNERS BY A DRAWING DETERMINED BY CHANCE ALONE; DEFINING "STRUCTURE" AS ANY KIND AND SIZE OF BUILDING WITH ANY ATTACHED ADDITIONS CONSIDERED A SINGLE STRUCTURE TO INCLUDE ANY KIND AND SIZE OF ANCHORED WATER VESSEL WITH ANY ATTACHED ADDITIONS TO THAT WATER VESSEL CONSIDERED A SINGLE STRUCTURE; DEFINING" GROSS EARNINGS" AS THE AMOUNT OF MONEY AFTER THE DEDUCTION OF MONEY PAID AS A LOSS TO THOSE PERSONS AS WINNERS; DEFINING "GROSS PROFIT" AS THE AMOUNT OF MONEY AFTER DEDUCTING THE OPERATIONAL COSTS TO OPERATE GAMBLING FROM THE GROSS EARNINGS; DEFINING "NET PROFIT" AS THE AMOUNT OF MONEY AFTER DEDUCTING ANY, AND ALL, FEDERAL TAXES, IF APPLICABLE, STATE AND LOCAL TAXES AS PROVIDED HEREIN FROM THE GROSS PROFIT; DEFINING "GAMBLING OPERATOR(S)" AS BARRY LEE EMIGH AND HAROLD GLEN MARTIN AS EQUAL PARTNERS, AND THOSE PERSONS, COMPANIES OR CORPORATIONS THE GAMBLING OPERATION IS TRANSFERRED TO WITH OR WITHOUT SALE: THE PROVISIONS OF THIS AMENDMENT SHALL TAKE EFFECT IMMEDIATELY UPON PASSAGE OF THIS AMENDMENT EXCEPT AS OTHERWISE PROVIDED AND REQUIRING THE GENERAL ASSEMBLY AND ANY AND ALL STATE OR LOCAL RULE MAKING AUTHORITIES TO MAKE ALL OTHER AND FURTHER LAWS AND REGULATIONS TO THE ENFORCEMENT OF THIS CONSTITUTIONAL AMENDMENT; MAKING THE PROVISIONS OF THIS AMENDMENT SEVERABLE; AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT;
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Pluggev. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic ActionCommittee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citingLeigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to certain ambiguities in the text of your proposed measure. I cannot at this time fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of these ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 • The term "gambling," as defined in Section 9 of your proposed measure, would necessarily include bingo and raffles. This conclusion is bolstered by the fact that the definition explicitly excludes lotteries, but does not exclude bingo and raffles. This broad definition results in a number of conflicts and incongruities throughout the measure, and particularly raises questions as to whether certain provisions that refer to "gambling" are intended to apply to bingo and raffles. Moreover, the term "gambling," as defined, would necessarily include the forms of gambling that are currently permitted under state law. It is therefore unclear whether the proposed amendment is intended to affect, change, or repeal those permitted forms of gambling and the various laws and regulations that are applicable to them.
 • The phrase "as equal partners," as used in Section 3 of your proposed measure, is unclear. In particular, the phrase raises questions about the legal status of the partnership in question, the nature of the authority that is granted to the two named individuals, and the nature of those individuals' authority as individuals. This ambiguity in turn leads to further ambiguity as to whether the measure has been complied with and how it is to be enforced in this regard.
 • Section 3, Paragraph 1 is a run-on sentence. It is impossible for me to discern from this sentence precisely what is permitted concerning the sale and complimentary service of alcoholic beverages, and what the limits of that permission are.
 • It is unclear who is to administer the payments that are required by Section 4 of the proposed measure. This ambiguity is exacerbated in situations in which the gambling operation has been transferred.
 • The scope of the term "profit," as used in Section 4, Paragraph 3, and as defined in Section 9, is unclear. As defined and as used in Section 4, Paragraph 3, the term appears to apply to any and all gains that result to any individual from gambling. If indeed this is the intended scope of the provision, some provision must be made for the administration of the undertaking described therein.
 • Section 5, Paragraph 4 makes reference to the possibility of a contest of determinations made by the State Auditor. This section makes no provision concerning the procedure and resolution of such contests.
 • In Section 7 of your proposed measure, the successive use of relative clauses introduced by the pronoun "which" render the intended meaning of this section unclear. In particular, it is difficult to discern the intended reference of the pronoun "which," as used therein. In other words, it is unclear exactly what "can be for any purpose," and exactly what "can be petitioned at any time," and exactly what "significantly changes current laws." Moreover, it is not clear what is meant by the phrase "`checks of balances' of governmental powers and the authority of the Governor."
 • Section 8 of your proposed measure refers to "anyone or all commissioners." No other mention is made of any commission, or of a required number of commissioners, or of such commission's power and authority.
 • Section 10 of your proposed measure provides that the measure is to be self-executing, but further empowers various authorities to "make all other and further laws and regulations to the enforcement" of the measure. This authorization raises substantial questions concerning the enforcement of the measure and concerning who is to have ultimate enforcement authority in the various jurisdictions.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP/cyh