Mr. Barry L. Emigh 1104 7th Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107, of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted various similar measures, some of which this office rejected due to ambiguities in the text of your proposed amendments. See Ops. Att'y Gen. Nos. 2004-153, 2004-136, 2004-062, 2003-382, 2003-328, 2003-307, 2003-295, 2003-275, 2003-258, 2003-245, 2003-232, 2003-204, 2003-169, 2003-026, 2003-008, 2002-346, 2002-335, 2002-325, 2002-308, 2002-293, 2002-272, 2002-262, 2002-242, 2002-227, 2002-208, 2002-118, 2002-102, 2002-077, 2002-042, 2002-026, 2002-001, 2001-380, 2001-358, 2001-341, 2001-173, 2001-110, 2001-095 and 2001-074. This office has revised and certified popular names and ballot titles for five similar measures, as evidenced by Ops. Att'y. Gen. Nos. 2003-351; 2003-054; 2002-140; 2001-196; and 2001-129. You have now submitted the following proposed popular name and ballot title for my certification:
 Popular Name AN AMENDMENT PERMITTING THE OPERATION OF BINGO, RAFFLES, STATE-OPERATED LOTTERIES AND GAMBLING
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION EMPOWERING THE GENERAL ASSEMBLY, UNLESS OTHERWISE PROVIDED, WITH THE DISCRETION TO CREATE A STATE OPERATED LOTTERY OR LOTTERIES WITH THE STATE-WIDE SALE OF LOTTERY TICKETS TO INCLUDE THE STATE'S OPERATION OF LOTTERIES IN COOPERATION WITH OTHER STATES AND LOTTERIES OPERATED IN COMBINATION WITH OTHER STATES WHICH CHANGES THE LOTTERY PROHIBITION CONTAINED IN ARKANSAS CONSTITUTION ARTICLE 19 SECTION 14; PERMITING [SIC] THE GENERAL ASSEMBLY WITH THE DISCRETION TO PERMIT THE STATE, OR ANY AGENCY OF THE STATE THEREOF, TO SUBCONTRACT THE SALE OF LOTTERY TICKETS; PERMITTING LOCAL OPTION ELECTIONS FOR THE ELECTORATE OF ANY CITY OR COUNTY AS PROVIDED UNDER AMENDMENT 7 OF THE ARKANSAS CONSTITUTION TO ACCEPT OR REJECT EACH OF THE FOLLOWING LOCAL BALLOT OPTIONS: "FOR" OR "AGAINST" THE OPERATION OF BINGO AND RAFFLES BY NON-PROFIT ORGANIZATIONS INCORPORATED IN THE STATE, "FOR" OR "AGAINST" THE OPERATION OF GAMBLING BY THOSE BUSINESSES PERMITTED TO SELL ALCOHOLIC BEVERAGES DURING THE PERMITTED HOURS OF ALCOHOLIC BEVERAGE SALES TO EXCLUDE PRIVATE CLUBS AND THOSE BUSINESSES PERMITTED TO SELL ONLY BEER AND/OR WINE, "FOR" OR "AGAINST" THE SALE OF LOTTERY TICKETS; EMPOWERING THE GENERAL ASSEMBLY, UNLESS PROVIDED FOR DIFFERENTLY, TO REGULATE, LICENSE AND TAX BINGO, RAFFLES, LOTTERIES AND GAMBLING; PROVIDING FOR THE LEGAL SHIPMENT OF GAMBLING DEVICES INTO THE STATE; DEFINING "BINGO" AS THE RISKING OF MONEY ON A GAME PLAYED WITH NUMBERED CARDS CORRESONDING [SIC] TO NUMBERED BALLS DRAWN AT RANDOM TO WIN A PRIZE OR MONEY; DEFINING "RAFFLE" AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE BUT EXCLUDES MONEY AS A PRIZE; DEFINING "LOTTERY" AS THE TYPICAL FORM OF A LOTTERY CHARACTERIZED BY THE ARKANSAS SUPREME COURT WHICH INVOLVES THE SALE OF A LARGE NUMBER OF CHANCES RELATIVE TO THE SELECTION OF A SMALL NUMBER OF WINNERS BY A DRAWING DETERMINED BY CHANCE ALONE; DEFINING "GAMBLING" AS THE RISKING OF MONEY BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH GAMES OF CHANCE, SKILL AND ANY COMBINATION THEREOF, BUT EXCLUDES THE OPERATION OF A LOTTER [SIC], BINGO AND RAFFLES; DEFINING "ALCOHOLIC BEVERAGES" AS ALL INTOXICATING LIQUORS OF ANY SORT TO INCLUDE BEER AND WINE; THE PROVISIONS OF THIS AMENDMENT SHALL TAKE EFFECT IMMEDIATELY UPON PASSAGE OF THIS AMENDMENT EXCEPT AS OTHERWISE PROVIDED AND REQUIRING THE GENERAL ASSEMBLY TO MAKE ALL OTHER LAWS TO THE ENFORCEMENT OF THIS AMEDNMENT [SIC]; MAKING THE AMENDMENT SEVERABLE AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Section One 1(1) of your proposed amendment states: "Unless provided for differently within the provision of this amendment the General Assembly shall be empowered with the discretion to create a State operated lottery or lotteries with the State-wide sale of lottery tickets to be operated within the State of Arkansas by the State of Arkansas, or an agency of the State thereof. (Emphasis added.) Section 1(3) of your proposed amendment, however, provides that: "The General Assembly shall be empowered with the discretion to permit the State, or an agency of the State thereof, to subcontract the sale of lottery tickets." These subsections of your amendment are contradictory. Although I understand that your intent may be to allow the State to subcontract the actual sale of lottery tickets to another entity, the reference in Section 1(1) to the "sale of lottery tickets to be operated . . . by the State of Arkansas or an agency . . . thereof" cuts against this intention and creates an ambiguity.
 2. Section 2 (1) of your proposed amendment provides that:" Upon operation of a State operated lottery with the State-wide sale of lottery tickets, as provided in Section 1 of this amendment, the governing body of any city or town or any person may petition the qualified voters within any city or town as provided under Amendment 7 of the Arkansas Constitution to initiate a local option election for the electorate within the respective jurisdiction to accept or reject the sale of lottery tickets. . . ." This language has been modified in some respects since your last submission, but continues to be confusing and ambiguous. First, the "governing body" of any city or town may not "petition the qualified voters . . . under Amendment 7." Amendment 7 does not grant rights to governing bodies, it grants rights to the people. This language is therefore confusing. Second, as I have repeatedly told you, the language" any person may petition the qualified voters . . . as provided under Amendment 7 . . . to initiate a local option election" is also ambiguous and confusing. As I stated in Opinion 2004-153:
 Section (2) is further confusing in suggesting that "anyone may petition the qualified voters within any city or town as provided under Amendment 7 of the Arkansas Constitution to initiate a local option election. . . ."
 As I noted in Ark. Ops. Att'y Gen. Nos. 2004-136 and 2004-062, in which I rejected similar proposed provisions as ambiguous:
 This section is further confusing in that you fail to specify how "anyone may petition the qualified voters . . . to initiate a local option election. . . ." The referenced Amendment 7 contains no provision whereby individuals are authorized to petition voters. With respect to county and municipal matters, the petition is directed to the County Election Board, not to voters.
 The modifications you have made since your last submission have not remedied this ambiguity. Although any person may exercise Amendment 7 rights, such a person does not "petition the qualified voters." Such person, instead, solicits signatures from legal voters in order to petition county officials to place the measure on the ballot. This same ambiguity appears throughout your proposed measure and is confusing in each place it appears.
 As I also noted in Opinion Att'y. Gen. 2004-153: "I must note that I have offered both of the above objections to your proposal before. As I have previously advised you, this office cannot devote its limited resources to telling you the same thing over and over again. In the future, address our objections before you resubmit a proposal." (Emphasis in original). This now makes the fourth time we have pointed out this ambiguity to you.
 3. Section 3 of your proposed amendment authorizes local option elections in cities and counties whereby the voters may accept or reject the operation of bingo and raffles by nonprofit organizations incorporated within the State. I assume, although it is not entirely clear, that such operation will continue to be unlawful unless and until a particular city or county votes affirmatively to authorize such action. An ambiguity arises, however, from the concurrent authority granted cities and counties in this regard. If a city first votes to authorize bingo and raffles and a county later votes against such operation (or vice versa), does the county vote control and overturn the city vote? Your amendment does not address this question. This same ambiguity arises with respect to Section 4(1), (2), (3) and (4) of your amendment, relating to local options elections to authorize gambling activity.
 4. Section 4(1) of your proposed amendment authorizes local option elections in cities and counties to accept or reject the operation of gambling to be operated by any business permitted to sell alcoholic beverages for on-premises consumption . . . "to exclude private clubs and those businesses permitted to sell only beer and/or wine. . . ." Your proposed amendment thereafter sets out the form of the ballot question as follows:
 (a) For the operation of gambling by any business permitted to sell alcoholic beverages for on-premise consumption during the permitted hours of alcoholic beverage sales to exclude private clubs and those businesses permitted to sell only beer and/or wine within the city or town of ______ in the county of ______.
 (b) Against the operation of gambling by any business permitted to sell alcoholic beverages for on-premise consumption during the permitted hours of alcoholic beverage sales to exclude private clubs and those businesses permitted to sell only beer and/or wine within the city or town of ______ in the county of ______.
 This ballot form is confusing under option (b) above, in allowing voters to vote "against" the operation of gambling" to exclude private clubs and those businesses permitted to sell only beer and/or wine within the city. . . ." This provision may confuse voters into thinking that an" against" vote would actually authorize gambling in private clubs and businesses permitted to sell only beer and/or wine because they are "exclude[d]" from the "against" vote. This ambiguity is repeated throughout Section 4 of your amendment, including in Sections 4(2), (3),(4) and (5).
 5. Section 5 of your proposed amendment authorizes a local option election to accept or reject the operation of gambling by any business permitted to sell alcoholic beverages for on-premises consumption "within the premise of those businesses permitted to operate para-mutel [sic] gambling during the permitted hours of alcoholic beverage sales to exclude private clubs and those businesses permitted to sell only beer and/or wine. . . ." As an initial matter, the exclusion for private clubs, etc., is somewhat confusing in this context. If there is a private club located within the premises of a business permitted to operate pari-mutuel gambling, will other types of gambling be disallowed on those private club premises, even though it is within the premises of the businesses permitted to engage in pari-mutuel activity?
 6. An additional ambiguity arises in the ballot form under Section 5 of your proposed amendment above. It seems either a typographical, syntactical or grammatical error appears in subsections (a) and (b) of Section 5, as illustrated in subsection (a) as follows:
 (a) For the operation of gambling by any business permitted to sell alcoholic beverages for on-premise consumption the premise of those businesses permitted to operate para-mutel [sic] gambling during the permitted hours of alcoholic beverage sale to exclude private clubs and those businesses permitted to sell only beer and/or wine within the county of _________.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary.
I cannot reiterate strongly enough, Mr. Emigh, that you should reviseyour submission adequately and properly address any ambiguities I havenoted in the past prior to resubmitting another proposal to my office.Your latest submission seeks placement on the November 2006 ballot. Youhave ample time to carefully craft a proposed constitutional amendment, atask which should be undertaken with the utmost of seriousness anddeliberation. Your repeated submissions have made unreasonable demands onthe limited time and resources of my staff. This will be especially trueduring and through the election season and the upcoming general sessionof the legislature.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh