Mr. Barry L. Emigh 1104 7th Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107, of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted various similar measures, some of which this office rejected due to ambiguities in the text of your proposed amendments. See Ops. Att'y Gen. Nos. 2004-299, 2004-153, 2004-136, 2004-062, 2003-382, 2003-328, 2003-307, 2003-295, 2003-275, 2003-258, 2003-245, 2003-232, 2003-204, 2003-169, 2003-026, 2003-008, 2002-346, 2002-335, 2002-325, 2002-308, 2002-293, 2002-272, 2002-262, 2002-242, 2002-227, 2002-208, 2002-118, 2002-102, 2002-077, 2002-042, 2002-026, 2002-001, 2001-380, 2001-358, 2001-341, 2001-173, 2001-110, 2001-095 and 2001-074. This office has revised and certified popular names and ballot titles for five similar measures, as evidenced by Ops. Att'y Gen. Nos. 2003-351; 2003-054; 2002-140; 2001-196; and 2001-129. You have made changes in the text of your proposal since your last submission and have now submitted the following proposed popular name and ballot title for my certification:
 Popular Name AN AMENDMENT PERMITTING STATE-OPERATED LOTTERIES, BINGO, RAFFLES, AND GAMBLING Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION EMPOWERING THE GENERAL ASSEMBLY WITH THE DISCRETION TO CREATE A STATE OPERATED LOTTERY OR LOTTERIES TO INCLUDE THE STATE'S OPERATION OF LOTTERIES IN COOPERATION WITH OTHER STATES AND LOTTERIES OPERATED IN COMBINATION WITH OTHER STATES WITH THE SALE OF LOTTERY TICKETS WHICH CHANGES THE LOTTERY PROHIBITION CONTAINED IN ARKANSAS CONSTITUTION ARTICLE 19 SECTION 14; PERMITTING LOCAL OPTION ELECTIONS FOR THE FOLLOWING:" FOR" OR "AGAINST" THE SALE OF LOTTERY TICKETS, "FOR" OR" AGAINST" THE OPERATION OF BINGO AND RAFFLES BY NON-PROFIT ORGANIZATIONS INCORPORATED IN THE STATE, "FOR" OR "AGAINST" THE OPERATION OF SLOT MACHINES BY THOSE BUSINESSES PERMITTED TO SELL ALCOHOLIC BEVERAGES DURING THE PERMITTED HOURS OF ALCOHOLIC BEVERAGE SALES TO EXCLUDE PRIVATE CLUBS AND THOSE BUSINESSES PERMITTED TO SELL ONLY BEER AND/OR WINE, "FOR" OR "AGAINST" THE OPERATION OF GAMBLING WITHIN THE PREMISE OF A HOTEL OR SIMILAR BUSINESS DURING THE PERMITTED HOURS OF ALCOHOLIC BEVERAGE SALES TO INCLUDE THOSE BUSINESSES PERMITTED TO OPERATE PARA-MUTUEL [SIC] WAGERING, BUT SHALL EXCLUDE BUSINESSES PERMITTED TO SELL ONLY BEER AND/OR WINE, EMPOWERING THE GENERAL ASSEMBLY TO REGULATE, LICENSE AND TAX BINGO, RAFFLES, LOTTERIES AND GAMBLING; EMPOWERING THE GENERAL ASSEMBLY WITH THE DISCRETION TO EMPOWER LOCAL GOVERNMENTS WITH THE AUTHORITY TO REGULATE, LICENSE AND TAX BINGO, RAFFLES, LOTTERIES AND GAMBLING; PROVIDING THE ELECTION RESULTS OF A COUNTY IS INCLUSIVE OF ALL CITIES AND TOWNS WITHIN THAT COUNTY, UNLESS, THERE IS A SEPARATE ELECTION WITHIN A CITY OR TOWN WITHIN THAT COUNTY BY WHICH A CITY OR TOWN'S ELECTION RESULTS SHALL STAND SEPARATE FROM THE COUNTY; PROVIDING A CITY, TOWN OR COUNTY, UNLESS OTHERWISE PROVIDED, MAY UPON DUE PUBLIC NOTICE AS REQUIRED BY LAW CALL A LOCAL BALLOT OPTION AS PROVIDED WITHIN THIS AMENDMENT AT ANY TIME; PROVIDING THE GOVERNING BODY OF ANY CITY, TOWN OR COUNTY MAY ONLY CALL A LOCAL BALLOT OPTION AS PROVIDED WITHIN THIS AMENDMENT ONCE EVERY 2 YEARS; PROVIDING FOR THE LEGAL SHIPMENT OF GAMBLING DEVICES INTO THE STATE; DEFINING "BINGO" AS THE RISKING OF MONEY ON A GAME PLAYED WITH NUMBERED CARDS CORRESONDING [SIC] TO NUMBERED BALLS DRAWN AT RANDOM TO WIN A PRIZE OR MONEY; DEFINING "RAFFLE" AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE BUT EXCLUDES MONEY AS A PRIZE; DEFINING "LOTTERY" AS THE TYPICAL FORM OF A LOTTERY CHARACTERIZED BY THE ARKANSAS SUPREME COURT WHICH INVOLVES THE SALE OF A LARGE NUMBER OF CHANCES RELATIVE TO THE SELECTION OF A SMALL NUMBER OF WINNERS BY A DRAWING DETERMINED BY CHANCE ALONE; DEFINING "SLOT MACHINE" AS THE RISKING OF MONEY BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH MECHANICAL OR ELECTRONIC GAMES OF CHANCE, SKILL AND ANY COMBINATION THEREOF; DEFINING "GAMBLING" AS THE RISKING OF MONEY BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH GAMES OF CHANCE, SKILL AND ANY COMBINATION THEREOF, BUT EXCLUDES THE OPERATION OF A LOTTER [SIC], BINGO AND RAFFLES; DEFINING" ALCOHOLIC BEVERAGES" AS ALL INTOXICATING LIQUORS OF ANY SORT TO INCLUDE BEER AND WINE; DEFINING "HOTEL" AS A BUSINESS FOR TRANSIENT ACCOMMODATIONS OR AS DEFINED BY LAW; THE PROVISIONS OF THIS AMENDMENT SHALL TAKE EFFECT IMMEDIATELY UPON PASSAGE OF THIS AMENDMENT EXCEPT AS OTHERWISE PROVIDED AND REQUIRING THE GENERAL ASSEMBLY TO MAKE ALL OTHER LAWS TO THE ENFORCEMENT OF THIS AMEDNMENT [SIC]; MAKING THE AMENDMENT SEVERABLE AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Section 2 of your proposal now provides as follows: "Upon operation of a State operated lottery with the sale of lottery tickets, as provided in Section 1 of this amendment, the governing body of any city, town or county may call a local option election or any person or group, as provided under Amendment 7 of the Arkansas Constitution, may solicite [sic] the signatures of the legal voters within any city, town or county in order to petition the county election board to place the following measure on the ballot:
 (a) For the sale of lottery tickets (in the city of (name of city) in the county of (name of county)) or (in the county of (name of county))
 (b) Against the sale of lottery tickets (in the city of (name of city) in the county of (name of county)) or (in the county of (name of county))
 I assume, as an initial matter, that upon passage of your amendment the sale of lottery tickets will be lawful in every county, city and town in this state and only upon a negative vote in any such county, city or town will the sale of lottery tickets be disallowed. Your amendment is not entirely clear in this regard, however. In any event, the proposed ballot above, however, is confusing in the way it mentions the county in which a city is located. The language "in the city of _____ in the county of _______" (emphasis added), may be construed by some voters as authorizing the sale of lottery tickets not only within the city or town limits but also within the entire county. This language is confusing, particularly where only city or town residents will be voting in this type of local option election. This same ambiguity is repeated in Sections 3(a) and (b); 4(1)(a) and (b); and 4(2)(a) and (b) of your proposal.
 2. Section 3 of your proposed amendment addresses local option elections to authorize bingo and raffles. Again, as with the local option elections regarding the sale of lottery tickets, your proposal does not clearly express the state of the law before and after such an election. I assume, in contrast to the initial legality with regard to the sale of lottery tickets, that the operation of bingo and raffles will be unlawful in every county, city and town, unless and until authorized by local option election. Again, however, you amendment does not expressly state such. (This same ambiguity attends Sections 4(1) and (2) of your proposal with regard to the effect of the authorization of slot machines and gambling). Nor does it state the effect of a "yes" or "no" vote thereafter, although this effect might be fairly implied. These matters will give the voters serious ground for reflection and as such, the effects must be clearly stated.
 3. You have revised Section 4 of your proposed amendment, which now authorizes a local option election in a city or town to authorize or reject the legal operation of "slot machines or other similar devices during the permitted hours of alcoholic beverage sales within the premise [sic] of any business permitted to sell alcoholic beverages for on-premise [sic] consumption to exclude private clubs and those businesses permitted to sell only beer and/or wine. . . ." Section 4(1)(a). Two ambiguities are presented by this language.
 First, in my opinion the use of the new language "slot machines or other similar devices" is confusing and potentially misleading. You have defined this new term "slot machines or other similar devices" at Section 8(1)(d) of your proposal as meaning "the risking of money between two or more persons where one must be loser and the other gainer with the use of mechanical and electronic games of chance or skill and any combination thereof." The words "slot machines or other similar devices" do not begin to describe the breadth of the definition of that term in your amendment. The words "slot machines or other similar devices" imply a slot machine or some type of device approximating a slot machine in operation. The actual definition in your proposed amendment for this term, however, could encompass any gambling activity utilizing electronic or mechanical means, whether or not similar in nature to a "slot machine." For example, the game of roulette employs what might be termed a "mechanical" element, a roulette wheel. It is not, however, a device that would ordinarily be thought of as "similar" to a slot machine. The disconnect between the words used and the definition of those words creates an ambiguity and a potentially misleading tendency.
 Second, as I pointed out in my rejection of your last submission (Op. Att'y Gen. 2000-299 at 7-8), it is confusing to present a ballot form under the "Against" option that" excludes" certain conduct because it may confuse voters into thinking the excluded conduct is authorized. Section 4 (1)(b) of your amendment allows city or town voters to vote "Against the legal operation of slot machines and other similar devices . . . to exclude private clubs and those businesses permitted to sell only beer and/or wine. . . ." This language may confuse some voters into thinking that an "Against" vote would actually permit the stated conduct in private clubs and business permitted to sell only beer and/or wine. This same ambiguity is repeated in Section 4(2)(b) of your proposal.
 4. Another ambiguity arises from Section 4(2)(b) of your proposal. This section authorizes a local option vote for or against "the legal operation of gambling during the permitted hours of alcoholic beverage sales within the premise [sic] of any hotel or similar business permitted to sell alcoholic beverages for on-premise [sic] consumption to include those businesses permitted to operate para-mutuel [sic] wagering. . . ." An ambiguity exists regarding the language "to include those businesses permitted to operate para-mutuel [sic] wagering." The use of the words "to include" raises a question as to whether only those businesses operating pari-mutuel wagering that might also fit within the definition of hotels or other similar businesses will be authorized to conduct gambling or whether you intend those businesses permitted to operate pari-mutuel wagering to stand as a separate category of authorized entities. I assume you intend the latter, but the language is ambiguous in this regard.
 5. Section 5 (2) and (3) of your proposed amendment provide as follows: "Unless provided for differently within the provisions of this amendment the governing body of any city, town, or county may upon due public notice as required by law call a local ballot option at any time." "The governing body of any city, town or county may only call a local ballot option, as provided in this amendment, once every two (2) years." In addition to the clear conflict between these two provisions, an ambiguity arises from Section 5(3). This provision restricts the calling of a "local ballot option" to once every two years. An ambiguity arises as to whether this language restricts a city, county or town to only one local option choice (e.g., to authorize or prohibit the sale of lottery tickets or to authorize bingo and raffles or slot machines) every two years or whether it only restricts the presentation of the same local ballot option (e.g., to authorize bingo and raffles) once every two years. Questions therefore arise under Section 5(3) as to whether a city, town or county can present a slate of options at one election to its voters for approval or rejection.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh