Mr. Charles L. Ormond The Insurance Place 101 South Moose Street Post Office Box 29 Morrilton, AR 72110
Dear Mr. Ormond:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed constitutional amendment. You have previously submitted various similar measures, some of which my predecessor rejected due to ambiguities in the text of your proposed amendments. See Ops. Att'y Gen. Nos. 2007-022, 2005-190, 2005-168, 2005-128 and 2005-089. My predecessor revised and certified popular names and ballot titles for two similar measures, as evidenced by Ops. Att'y Gen. Nos. 2005-239 and 2005-219. You have made changes in the text of your proposal since your last submission, and have now submitted the following proposed popular name and ballot title for my certification:
Popular Name
The Arkansas Commission on Lotteries and Wagering Amendment
Ballot Title
AN AMENDMENT TO THE ARKANSAS CONSTITUTION CREATING THE ARKANSAS COMMISSION ON LOTTERIES AND WAGERING AND INVESTING IT WITH POWER TO LICENSE AND REGULATE CHARITABLE BINGO AND RAFFLES, CONDUCT AND REGULATE WAGERING GAMES, AND REQUIRING IT TO OPERATE AND REGULATE ONE OR MORE STATEWIDE LOTTERY GAMES; DEPRIVING THE GENERAL ASSEMBLY OF ANY POWER TO REGULATE OR REVIEW THE COMMISSION; RENDERING INAPPLICABLE TO THE COMMISSION ANY STATE LAW REGULATING A STATE AGENCY; PROVIDING FOR THE APPOINTMENT BY THE GOVERNOR OF FOUR (4) INITIAL COMMISSIONERS, ONE FROM EACH CONGRESSIONAL DISTRICT, AND THE APPOINTMENT OF ONE ADDITIONAL INITIAL COMMISSIONER, WHO SHALL BE MR. CHARLES ORMOND OF MORRILTON, ARKANSAS, WHO SHALL SERVE AS DIRECTOR; AUTHORIZING THE GOVERNOR TO ARRANGE STAGGERED TERMS OF TWO (2), FOUR (4), SIX (6) AND EIGHT (8) YEARS FOR THE FOUR (4) INITIAL COMMISSIONERS AND SETTING THE TERM OF MR. CHARLES ORMOND BEGINNING JANUARY 1 OF THE YEAR FOLLOWING THE ADOPTION AND ENACTMENT OF THIS AMENDMENT FOR A TERM OF TEN (10) YEARS; PROVIDING, UPON THE EXPIRATION OF THE INITIAL COMMISSIONERS' TERMS, FOR THE STAGGERED POPULAR, NONPARTISAN, PLURALITY ELECTION OF FOUR FUTURE COMMISSIONERS ONE FROM EACH CONGRESSIONAL DISTRICT FOR ONE EIGHT (8) YEAR TERM EACH, AND THE APPOINTMENT, BY THE FOUR (4) ELECTED COMMISSIONERS, OF A FIFTH COMMISSIONER TO SERVE AS DIRECTOR; AUTHORIZING THE DIRECTOR TO VOTE IN CASE OF A TIE AND LIMITING HIS SERVICE TO NO MORE THAN TEN (10) YEARS; SETTING THE QUALIFICATIONS OF COMMISSIONERS AND PROVIDING FOR THE FILLING OF TEMPORARY VACANCIES BY THE REMAINING COMMISSION MEMBERS; AUTHORIZING THE COMMISSIONERS TO SET THEIR OWN REASONABLE SALARIES AND THE SALARY OF THE DIRECTOR AND OTHER EMPLOYEES; AUTHORIZING THE COMMISSION TO LICENSE AND REGULATE CHARITABLE BINGO BY CERTAIN NONPROFIT ENTITIES WITH NET RECEIPTS USED ONLY FOR CHARITABLE, RELIGIOUS AND PHILANTHROPIC PURPOSES AND REQUIRING IT TO OPERATE AND REGULATE ONE OR MORE STATEWIDE LOTTERY GAMES, AS DEFINED, THROUGH CONTRACTUALLY-AUTHORIZED LOTTERY GAME RETAILERS; AUTHORIZING THE COMMISSION TO CONDUCT AND REGULATE WAGERING GAMES, AS DEFINED, IN FACILITIES OWNED BY THE COMMISSION AND OPERATED BY THE COMMISSION OR THROUGH CONTRACTS WITH ONE (1) OR MORE PERSONS; AUTHORIZING LODGING, RECREATIONAL AND ENTERTAINMENT FACILITIES IN CONJUNCTION WITH WAGERING FACILITIES AND AUTHORIZING THE SERVING OF ALCOHOLIC BEVERAGES AT ANY TIME IN WAGERING FACILITIES; REQUIRING THE COMMISSION TO COMPLY WITH ALCOHOLIC BEVERAGE LAWS NOT IN CONFLICT WITH THE AMENDMENT; RESTRICTING THE CONDUCTING OF WAGERING GAMES TO COUNTIES WHERE THE VOTERS HAVE APPROVED SUCH GAMES, EXCEPT THAT THE COMMISSION MAY AGREE TO LICENSE ANY THOROUGHBRED OR GREYHOUND RACING TRACK OWNER TO CONDUCT WAGERING GAMES WITHOUT LOCAL VOTER APPROVAL; AUTHORIZING SIMULCASTING OF RACES HELD AT THE TRACKS AT WAGERING FACILITIES OF THE COMMISSION OR ITS CONTRACTORS; DENYING THE COMMISSION THE AUTHORITY TO REGULATE PARI-MUTUEL WAGERING AT THE TRACKS; PROVIDING THAT DISAPPROVAL OF WAGERING GAMES BY COUNTY VOTERS WILL NOT AFFECT PARI-MUTUEL WAGERING BY HORSE RACING OR GREYHOUND TRACKS OR WAGERING AUTHORIZED BY OTHER LAW; REQUIRING THE COMMISSION TO ESTABLISH "WAGERING DISTRICTS" WHEN ONE (1) OR MORE COUNTIES APPROVE WAGERING GAMES; PROVIDING FOR THE APPOINTMENT, BY THE COMMISSION, OF "WAGERING DISTRICT ADVISORY COMMITTEES" FOR EACH WAGERING DISTRICT; AUTHORIZING THE COMMISSION TO: (1) BORROW MONEY AND ISSUE NEGOTIABLE EVIDENCES OF DEBT, BUT PROVIDING THAT THE STATE, COMMISSIONERS AND ITS EMPLOYEES SHALL NOT BE LIABLE FOR SUCH DEBTS; (2) PLEDGE ITS REVENUES AND MORTGAGE ITS PROPERTY; (3) ACQUIRE PROPERTY BY EMINENT DOMAIN IN THE SAME MANNER AS EXERCISED BY THE GAME AND FISH COMMISSION; AND (4) RECEIVE FUNDS APPROPRIATED BY LAW; REQUIRING INCOME RECEIVED FROM LICENSURE OF CHARITABLE BINGO TO BE USED SOLELY FOR ADMINISTRATION OF THAT PROGRAM; REQUIRING RETENTION OF NET LOTTERY PROCEEDS BY THE COMMISSION TO SUPPORT ITS FUNCTIONS; REQUIRING THE DISTRIBUTION OF NET WAGERING PROCEEDS IN A WAGERING DISTRICT AS FOLLOWS: (1) FOURTEEN PERCENT (14%) TO THE COUNTIES, MUNICIPALITIES AND SCHOOL DISTRICTS IN THE WAGERING DISTRICT AS DETERMINED BY THE COMMISSION AFTER CONSIDERING THE PROPORTION OF REAL PROPERTY TAXES DISTRIBUTED BY EACH COUNTY TO THE TAXING ENTITIES DURING THE PREVIOUS CALENDAR YEAR; (2) SIX PERCENT (6%) FOR REBATES TO REAL PROPERTY OWNERS OF REAL PROPERTY TAXES PAID IN THE DISTRICT AS DETERMINED BY THE COMMISSION; (3) TEN PERCENT (10%) TO A TRUST FUND TO REIMBURSE RESIDENTS OF THE DISTRICT FOR A PORTION OF THEIR HEALTH INSURANCE PREMIUMS AS DETERMINED BY THE COMMISSION; AND (4) SEVENTY PERCENT (70%) RETAINED BY THE COMMISSION FOR OPERATIONS; AUTHORIZING THE GENERAL ASSEMBLY TO INCREASE THE PERCENTAGES DISTRIBUTED TO TAXING UNITS AND FOR TAX REBATES AND TO THEREBY REDUCE THE AMOUNT RETAINED BY THE COMMISSION; AUTHORIZING THE COMMISSION TO REMIT SURPLUS FUNDS TO THE STATE APPORTIONMENT FUND IN THE STATE TREASURY; PROVIDING THAT COMMISSION EXPENDITURES SHALL NOT BE SUBJECT TO APPROPRIATION BY THE GENERAL ASSEMBLY; LEGALIZING SHIPMENTS OF GAMBLING DEVICES INTO ARKANSAS FOR PURPOSES OF FEDERAL LAW; DENYING THE GENERAL ASSEMBLY AND POLITICAL SUBDIVISIONS REGULATORY AUTHORITY OVER THE COMMISSION OR ITS ACTIVITIES EXCEPT AS OTHERWISE STATED; AMENDING ARKANSAS CONSTITUTION ART. 19, SECTION 14 TO OBVIATE THE EXISTING PROHIBITION AGAINST LOTTERIES WHERE SUCH LOTTERIES ARE AUTHORIZED ELSEWHERE IN THE CONSTITUTION; AMENDING ARKANSAS CONSTITUTION AMENDMENT 84 TO PROVIDE THAT THE ARKANSAS COMMISSION ON LOTTERIES AND WAGERING SHALL PROVIDE BY LAW FOR THE LICENSURE AND REGULATION OF AUTHORIZED BINGO AND RAFFLES ORGANIZATIONS TO CONDUCT THE GAME OF BINGO OR RAFFLES AND MAY LEVY TAXES ON THE ACTIVITIES; AND MAKING THE AMENDMENT SEVERABLE AND EFFECTIVE JANUARY 1 OF THE YEAR FOLLOWING ADOPTION AND ENACTMENT OF THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certification nor rejection of a popular name and ballot title reflects our view of the merits of the proposal because this Office has been given no authority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's Political Caucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277,285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418,798 S.W.2d 34 (1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
You have changed the language of your measure since your last submission in response to my issuance of Op. Att'y Gen. 2007-022. In that Opinion I noted, among other things, that although your former measure regulated charitable bingo, it did not resolve how it would interact with newly adopted Amendment 84 to the Arkansas Constitution, which also addresses that topic. Under Amendment 84, power to regulate and tax charitable bingo and raffles is invested in the General Assembly. In Opinion 2007-022, I noted that your measure would presumably vest power in the Commission, rather than the General Assembly, to regulate charitable bingo, but that I was uncertain as to whether the power of the General Assembly to "tax" charitable bingo would remain in light of the language of your measure. In addition, I noted that your former measure did not mention the regulation of "raffles," which presumably would be left by your former measure to the General Assembly under Amendment 84.
You have now changed the text of your measure to include a definition of "raffles" and to give the Commission the power to "operate and regulate" raffles. See Section 1 (6) and Section 2(a). You have also added language to your measure amending the provisions of Amendment 84 by substituting the Commission for the General Assembly as the regulatory entity over charitable bingo and raffles, and requiring that the Commission provide by "rule" (rather than by "law") for the licensure and regulation of bingo and raffles organizations. Id. at § 18. The text of your measure also repeals that portion of Amendment 84 authorizing the General Assembly to levy taxes on charitable bingo and raffles. Id. Notwithstanding these changes, your proposed ballot title states the following with regard to this section of your measure: "AMENDING ARKANSAS CONSTITUTION AMENDMENT 84 TO PROVIDE THAT THE ARKANSAS COMMISSION ON LOTTERIES AND WAGERING SHALL PROVIDE BY LAW FOR THE LICENSURE AND REGULATION OF AUTHORIZED BINGO AND RAFFLES ORGANIZATIONS TO CONDUCT THE GAME OF BINGO OR RAFFLES AND MAY LEVY TAXES ON THE ACTIVITIES. . . ." (Emphasis added).
I am uncertain from your own characterization of your measure in your proposed ballot title whether your measure purports to authorize the Commission to "levy taxes" on charitable bingo and raffles. The only thing made clear from the actual text of your measure is that the General Assembly's power to levy taxes on these activities would be repealed. Nothing else in the text of your measure indicates that the Commission is expressly given the power to "tax" these activities. Your measure does indicate that a "licensure fee" for charitable bingo may be charged by the Commission. See § 6 (a)(2). I cannot find any express authority in the text of your current measure, however, for the Commission to "tax" the operation of charitable bingo or raffles. In addition, it is not clear that the Commission would have such power by virtue of Section 2(a) of your measure, which generally vests in the Commission "all powers necessary to operate and regulate charitable bingo, [and] raffles." Id. at Section 2(a). I am thus somewhat uncertain of your intention with regard to the Commission's authority to "levy taxes" on these activities. Although I am authorized to substitute and certify a more suitable ballot title for the one you have proposed (see A.C.A. § 7-9-107 (b)), I am hesitant to do so in light of my uncertainty as to your intention as to this point.
One additional ambiguity in your test should be mentioned in regard to your current submission. Section 3 of your measure governs the appointment by the Governor of four "initial commissioners" and states that the Governor shall arrange the terms of appointment so that the term of one commissioner shall expire "one (1) year following adoption and enactment on December 31." Id. at § 3(a)(2)(A). Your measure then states that the term of the three other initial commissioners shall expire four, six and eight years, respectively, "following adoption and enactment on December 31." Id. at § 3 (a)(2)(B),(C) and (D). Other portions of your measure indicate that the successor commissioners are to be elected by popular vote at the "regular biennial general election." Id. at § 4(e)(1). Presumably, although it is not stated, your measure would be submitted to the electors at the November 2008 general election. If adopted, your measure would become effective on January 1, 2009 (see § 19), and the Governor would presumably appoint the initial commissioners in January of 2009, or shortly thereafter. One of these initial commissioners would serve a one-year term, presumably from early 2009 until December 31, 2009. An ambiguity arises as to how this appointee's successor could be elected at a regular biennial election. The regular biennial general elections are held in November of even-numbered years. See A.C.A. § 7-5-102 (Repl. 2000). I am thus presented with difficulty in adequately summarizing this portion of your measure in a ballot title for the electorate.
As a final matter, I anticipate that several changes to your ballot title may be necessary upon resolution of these ambiguities. Of particular importance is the fact that the text of your measure refers only to "wagering games" and "facilities" at which wagering games are conducted, and at no point uses the word "casino." Similarly, your measure only tangentially mentions the word "gambling." See Id. at § 14. More candor in your ballot title will likely be required by the Arkansas Supreme Court should your measure be challenged in that forum. See, e.g., Christian Civic Action Committee v. McCuen, 318 Ark. 241,884 S.W.2d 605 (1994) (striking down ballot title using the euphemism of "additional racetrack wagering" to describe activities that involved elements of casino-style gambling); and Crochet v. Priest, 326 Ark. 338,931 S.W.2d 128 (1996) (striking down ballot title using the term "video terminal games" where voters might not be able to determine that it described what are more commonly known as slot machines). See also, Parker v. Priest, 326 Ark. 123, 930 S.W.2d 322 (1996) (upholding ballot title against several challenges, and stating that the ballot title in that case "clearly refers to casino gambling as casino gambling").
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN McDANIEL Attorney General